**In re INFOREX, INC., Inforex International Sales Corp., Debtors.**

**INFOREX, INC., Paul P. Brountas, and Timothy C. Cronin, Plaintiffs,**

**v.**

**Thomas G. BURRIDGE, Aileen Cassel, Howard J. Crede, Virginia De Andrea, Jacob De Herrera, Corrinne L. Doering, Richard H. Donlon, John C. Eaton, Gerald A. and Margaret J. Garinger, John E. Griffith, Arthur M. Guida, Calvin G. Heisler, Marilyn Jo Hitchens, William S. Jackson, Jr., Lawrence H. Kaiser, Kenneth K. Kerkling, Max A. Krey, W. Arthur Peterson, John B. Ragatz, Benjamin J. Schafer, Donald H. Schurr, Jr., John G. Seberg, Philip Shaiman, Stanley N. Singer, Irvin L. Stumpf, Arthur Thad Smith, Glenn W. Sollie, Donald D. Spencer, Egon T. Weber, Jerry R. and Ruth A. Whalen, and Wendell L. Wood, Defendants.**

**Bankruptcy Nos. 79–01966–L, 79–01965–L. Adv. No. 81–0805–L.**

United States Bankruptcy Court, D. Massachusetts.

Jan. 17, 1983.

John M. McCamish, Jr., San Antonio, Tex., with whom Barry A. Chasnoff and Michael L. Kreager, San Antonio, Tex., were on brief, for plaintiffs; McCamish, Ingram, Martin & Brown, P.C., San Antonio, Tex. and Fletcher, Tilton & Whipple, P.C., Worcester, Mass., of counsel.

Rodney R. Patula, Englewood, Colo., with whom Christopher N. Mammel and Eleanor A. Mentor, Englewood, Colo., were on brief, for defendants; Pryor, Carney & Johnson, P.C., Englewood, Colo., and Warner & Stackpole, Boston, Mass., of counsel.

## OPINION

THOMAS W. LAWLESS, Chief Judge.

The issue before the Court is whether a suit for tortious conduct brought by a number of former shareholders of the Debtors, Inforex, Inc., (Inforex) against Inforex's present and/or former officers and directors is barred by the confirmation of Inforex's plan of reorganization wherein all rights of the shareholders were extinguished. The facts are not in dispute, only the conclusions of law to be drawn therefrom.

### FACTS

On October 23, 1979, Inforex commenced a Chapter 11 case under the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (Code), and successfully proposed and obtained acceptances of a plan of reorganization (Plan). The Plan was confirmed through a series of confirmation orders beginning with Confirmation Order No. 18 on August 26, 1980. The Plan provided for the acquisition of Inforex's stock by Flex, Incorporated (Flex), a subsidiary of Datapoint Corporation (Datapoint) and of FNCB Capital Corporation (FNCB), a subsidiary of Citicorp, in accordance with the terms of the Stock Exchange Agreement incorporated into the Plan among Inforex, Datapoint and Flex dated June 10, 1980 (Stock Exchange Agreement). The Plan provided for the cancellation of each share of Inforex stock in exchange for a $.50 market value equivalent in the stock of Datapoint, and a contingent right to receive cash or additional Datapoint common stock. The Confirmation of the Plan terminated "all rights and interests of equity holders in Class Thirteen [the Inforex stockholders]." Paragraph 8(d) of Confirmation Order No. 18. Paragraph 9 of Confirmation Order No. 18 provided that:

All holders of claims and interests whose claims and interests are discharged by this order are enjoined from instituting or continuing any action or employing any process to collect the amount of such claims and interests as personal liabilities of the Debtors and are enjoined from

instituting or continuing any action, derivative or otherwise, in the name or on behalf of, or in the right of, the Debtors. . . .

Paragraph 15 of Confirmation Order No. 18 further stated that:

That all creditors of, claimants against, and persons claiming or having any interest of any nature whatsoever, in the property and assets of the Debtors, wherever situated, be, and hereby are, perpetually enjoined and stayed from pursuing or attempting to pursue, or commencing any suits or proceedings at law, in equity or otherwise, against the Debtors and their property or against any person or persons claiming by, under or through them, directly or indirectly, on account of or based upon any right, claim or interest which any such creditor, claimant or other person may have had in, to or against their property or assets, except with respect to claims, rights or interests arising out of the Plan or the orders of this Court. . . .

Also incorporated into the Plan [by Confirmation Order No. 20 on September 24, 1980] is an "Agreement to Pay" entered into by and among Flex, Inforex, Datapoint and certain of the past and present officers and directors of Inforex, as beneficiaries of the agreement (Beneficiaries). Succinctly, in consideration of the waiver and release by the Beneficiaries of all their rights to indemnification, including but not limited to indemnification rights under Inforex's Certificate of Incorporation, state law and any other agreement (Indemnification rights), Flex, Inforex and Datapoint agreed to indemnify the Beneficiaries up to $1,250,-000. for:

all amounts, including without limitation attorneys' fees, costs, settlements and judgments, arising out of any claim, investigation, action, suit or proceeding, including without limitation any claims, investigations, actions, suits or proceedings brought or made by a governmental authority (collectively referred to as "Claims"), made or brought against any one or more of the BENEFICIARIES

solely based on alleged acts or omissions which were committed in his or their capacity as an officer, director employee or agent of INFOREX prior to the effective date of this Agreement. . . .

Paragraph 13 of the Confirmation Order No. 18 provided "[t]hat this court shall retain jurisdiction of this Chapter 11 case for the purposes provided in this order, in any injunction issued by this Court, in the Plan and under Section 1123 of the Bankruptcy Code." On September 26, 1980, Flex became the sole shareholder of Inforex pursuant to the Plan. Since that date, the former Inforex shareholders, including the above-named Defendants, have received both the initial and additional payments provided by the Plan.

On June 15, 1982, the Defendants filed a complaint against the above-named Plaintiffs (Plaintiffs) and other former officers and/or directors of Inforex in the United States District Court for the District of Colorado (the "Denver Complaint") seeking compensatory and punitive damages for violation of Rule 10b–5, promulgated under Section 10(b) of the Securities Exchange Act of 1934 [15 U.S.C. § 78j(b) ], by the individual Plaintiffs and other former officers and/or directors of Inforex prior to and/or during its Chapter 11 case.

Inforex is not a defendant in the Colorado case.

On July 23, 1982, the Plaintiffs initiated a complaint in this Court seeking a declaratory judgment that the Defendants' Denver Complaint is barred by the Confirmation of Inforex's Plan of Reorganization and further requesting the issuance of a permanent injunction against the continuation of said suit. The Defendants have moved to dismiss or, in the alternative for the entry of an order granting them summary judgment.

## ISSUES

This dispute involves an interpretation of 11 U.S.C. § 1141(d)(1) which provides, in relevant part, that:

(d)(1) Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan—

(A) discharges the debtor from any debt that arose before the date of such confirmation, and any debt of a kind specified in section 502(g), 502(h), or 502(i) of this title, whether or not—

(i) a proof of the claim based on such debt is filed or deemed filed under section 501 of this title;

(ii) such claim is allowed under section 502 of this title; or

(iii) the holder of such claim has accepted the plan; and

(B) terminates all rights and interests of equity security holders and general partners provided for by the plan.

There are two principal issues raised: first, whether the alleged liability of the officers and directors has been discharged under subsection (d)(1)(A) of 11 U.S.C. § 1141. Subsumed under that issue is consideration of the effect of the "Agreement to Pay" whereby Inforex agreed to indemnify the officers and/or directors for any legal costs and judgment entered against the Plaintiffs. Even if such liability has not been discharged, the second issue is whether the Defendants are barred from instituting the Denver Complaint because the confirmation of the Plan has terminated all rights and interests of the equity security holders under subsection (d)(1)(B), 11 U.S.C. § 1141(d)(1)(B).

## DISCUSSION

■ Plaintiffs' first contention—that the confirmation of Inforex's Plan discharged the alleged tort[1] liability of its officers and directors—must fail because the claims asserted by the Defendants in the Denver Complaint are not claims against Inforex. No personal or direct liability of Inforex is sought to be established. The Denver Complaint alleges direct tortious conduct by the above Plaintiffs and as

such is not a shareholder derivative suit against Inforex's officers and directors for breach of their fiduciary duties owed to the corporation. Section 10(b) of the 1934 Act is "directed *solely* at that type of misrepresentation or fraudulent practice usually associated with the sale or purchase of securities *rather than at fraudulent mismanagement* of corporate affairs. . . ." *Birnbaum v. Newport Steel Corp.,* 193 F.2d 461 (2nd Cir.1952), *cert. den.* 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952) (emphasis added). A director or officer of a corporation is individually liable for his or her own tortious acts even when those acts are committed in connection with or in furtherance of the corporation's business. *See, e.g., Tyler v. Savage,* 143 U.S. 79, 12 S.Ct. 340, 36 L.Ed. 82 (1892); *Barry v. Legler,* 39 F.2d 297 (8th Cir.1930); *Poulsen v. Treasure State Industries, Inc.,* 626 P.2d 822, 829 (Mont.1981). The fact that Inforex's discharge prevents it from being joined as a defendant in the Colorado action does not affect the liability of the officers and/or directors for their alleged tortious conduct because it is a fundamental notion of bankruptcy law that "discharge of a debt of the debtor does not effect the liability of any other entity on, or the property of any other entity for, such debt." 11 U.S.C. § 524(e).

Section 4(b) of the Bankruptcy Act (formally 11 U.S.C. § 22(b) explicitly provided, in pertinent part, that "[t]he bankruptcy of a corporation shall not release its officers, the members of its board of directors or trustees or of other similar controlling bodies, or its stockholders or members, as such, from any liability under the laws of a State or of the United States." Plaintiffs' disingenuous argument that the absence of a provision containing similar language in the Bankruptcy Code evidences Congress' intention to protect a debtor's officers and directors from tort liability ignores the broad language of § 524(e) whereby the principle of § 4(b) of the Act was incorporated into

---

**1.** A cause of action under Rule 10b–5 sounds in tort. *Kardon v. National Gypsum Co.,* 69 F.Supp. 512, 513 (E.D.Pa.1946).

the Code. Clearly, the confirmation of Inforex's Plan has not discharged any tort liability of the officers and/or directors of Inforex.

In a somewhat similar mode, Plaintiffs contend that the claims asserted by the Defendants in the Denver Complaint constitute, by virtue of Inforex's obligations under the "Agreement to Pay", the assertion of direct liability against Inforex and as such the confirmation of Inforex's Plan of Reorganization discharged any liability and bars the institution of the Denver suit. To state this proposition is to refute it.

■ It is also a fundamental concept that an indemnification agreement is a collateral contract, personal to the parties and separate and distinct from the underlying tort claim. *See, e.g., Kerr v. City of Chicago,* 424 F.2d 1134, 1141–42 (7th Cir.1970); 41 Am.Jur.2d, Indemnity § 41 (1968). Plaintiffs' argument that the Agreement to Pay transforms the former shareholders' action into a direct one against Inforex is thus not only contrary to the law of indemnification but is also directly refuted by the Agreement to Pay:

> This Agreement is *personal* to the parties executing it and *shall in no case create in any third party* including, without limitation, any insurance company, *rights as a third-party beneficiary* and shall in no way effect the validity and enforceability of the Current Insurance Policy. Agreement to Pay, ¶ 6 at 4 (emphasis added).

The Agreement to Pay merely supercedes Inforex's obligations to its officers and directors under its Certificate of Incorporation and the Delaware Corporate Code. Defendants are in no way attempting to make a claim against Inforex by means of the Agreement to Pay as Inforex is not a named defendant in the Colorado action. The indemnification agreement is only of concern to the parties to it.

Moreover, the very existence of the Agreement to Pay indicates that any liability of the officers and directors has not been terminated by the Plan of Reorganization. To say that the insertion of an indemnification agreement into a plan of reorganization insulates the officers and directors from tort liability is not only nonsensical but a result that is contrary to public policy. If plaintiffs' contention is accepted, such a holding would serve to encourage the filing of corporate bankruptcies by officers and directors who hope to escape the consequences of their tortious acts.

Inforex's confirmation order only discharged and enjoined the collections of those claims and interests which were "personal liabilities of the Debtors." Paragraph 9 of Confirmation Order No. 18. As seen in the discussion *supra,* the claims asserted in the Denver Complaint are not personal liabilities of Inforex. Furthermore, rather than extinguishing the indemnification rights of the officers and directors,[2] the Plan *expressly* provides for same. Any potential effect that the Denver Complaint might have on the reorganized Debtor's assets is thus indirect and the product of the Debtor's Plan itself.

> It is well established that in order for a judicial proceeding to be subject to the injunctive authority of the Chapter X court it must have as its immediate objective a judgement against the debtor.... *In re Stanndco Developers, Inc.,* 534 F.2d 1050, 1052 (2d Cir.1976) (citations omitted).

Since the former shareholders, as plaintiffs in the Denver Complaint, do not seek to establish the "personal liability" of Inforex, this Court has no jurisdiction to enjoin the Denver suit. *See, e.g., In re Stanndco Developers, Inc., supra,* at 1053; *In re Muntz TV, Inc.,* 229 F.2d 314 (7th Cir.1956); *In re Patten Paper Co.,* 86 F.2d 761, 765 (7th Cir.1936). The "mere financial interest of a bankrupt estate in the outcome of the litigation pending in state courts does not authorize the issuance of an injunction against such prosecution." *In re Gobel, Inc.,* 80 F.2d 849, 852 (2nd Cir.1936).

---

**2.** The court takes no position whether a plan of reorganization could extinguish these indemnification rights as it is not necessary for today's decision. *See, In re THC Financial Corp.,* 446 F.Supp. 1333 (D.Haw., 1977).

Accordingly, the Agreement to Pay does not bar the prosecution of the former shareholders claims against the former directors and officers of Inforex.

In addition, Plaintiffs argue that since "the confirmation of a plan terminates all rights and interests of equity security holders ... provided for by the plan,"[3] the Defendants right to bring the Denver Complaint has been terminated by Inforex's Plan. The Defendants contend, however, that the rights terminated by the Plan were only those rights and interests which the shareholders had *in Inforex,* and that any causes of action the shareholders might have *against the officers and directors* have not been extinguished. I agree.

The private right of action judicially implied under Section 10(b) of the Securities and Exchange Act of 1934 and Rule 10b–5 to sue for fraud in connection with the purchase and sale of securities is only granted to *purchasers* and *sellers* of securities. *Birnbaum v. Newport Steel Corp., supra.* The former shareholders are not suing the Inforex officers and directors for breach of fiduciary duties owed to the corporation or to the shareholders as these causes of action are expressly excluded from a Rule 10b–5 suit. *Id.* In order to maintain a Rule 10b–5 action it is not necessary to have ownership of the stock (and thus rights in the corporation) at the time the suit is instituted because obviously a *seller* of stock has no interest in the corporation after he or she sells the stock. However, the seller of stock has independent rights under Rule 10b–5 to remedy any fraud or misrepresentation that resulted in the sale of the stock. *See, e.g., Engl v. Berg,* 511 F.Supp. 1146 (E.D.Pa.1981); *Dudley v. Southeastern Factor & Finance Corp.,* 446 F.2d 303 (5th Cir.) *cert. den.* 404 U.S. 858, 92 S.Ct. 109, 30 L.Ed.2d 101 (1971). In short, it is the *purchase* and *sale* of stock and not the *ownership* of stock that creates a right of action under Rule 10b–5. In *Blue Chip Stamps v. Manor Drug Stores,* 421

U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975), the Court stated that "[o]wnership of stock ... says little about whether a plaintiff's investment decision ... was even made." 421 U.S. at 746 n. 10, 95 S.Ct. at 1930 n. 10. While the Plan terminated the ownership interest of the equity holders in Inforex, the Plan did not extinguish the rights of these shareholders to sue the officers and directors for their alleged fraudulent misrepresentations that adversely affected the shareholders' investment decisions.

## CONCLUSION

Defendants have moved for summary judgment or in the alternative, to dismiss the Plaintiffs' complaint for failure to state a cause of action. Rule 12(b)(6)[4] of the Federal Rules of Civil Procedure provides that if on a motion to dismiss for failure of the pleadings to state a claim upon which relief can be granted matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 of the Federal Rules of Civil Procedure.[5] Since the Court has considered Inforex's Plan of Reorganization, its Order of Confirmation, and the Denver Complaint, Defendants' motion is treated as one for summary judgment. *See generally* 2 A.L.R.Fed. 1027 (1969).

Accordingly, the Court has accepted Plaintiffs' well-pleaded material allegations as true and has given the Plaintiffs the benefit of the doubt with respect to both the drawing of favorable inferences from the evidence and the existence of any material fact. *See Ferguson v. Omnimedia, Inc.,* 469 F.2d 194 (1st Cir.1972); *United States v. Diebold,* 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). Therefore, for purposes of Defendants' Motion for Summary Judgment, the Court has assumed that the Denver Complaint will result in a claim by the Colorado defendants against Inforex under

---

**3.** 11 U.S.C. § 1141(d)(1)(B).

**4.** Bankruptcy Rule 712 incorporates F.R.C.P. 12(b)(6).

**5.** Bankruptcy Rule 756 incorporates F.R.C.P. 56.

the Agreement to Pay. Having done so, I conclude that there is no genuine issue as to any material fact and that the Defendants are entitled to judgment as a matter of law.

So Ordered.