837 F.2d 89
 56 USLW 2411, 18 Collier Bankr.Cas.2d 316,
17 Bankr.Ct.Dec. 293,
Bankr. L. Rep. P 72,180
 MacARTHUR COMPANY and Western MacArthur Company, Appellants,
v.
JOHNS-MANVILLE CORPORATION, Manville Corporation, Manville
International Corporation, Manville Export Corporation,
Johns-Manville International Corporation, Manville Sales
Corporation, f/k/a Johns-Manville Sales Corporation,
successor by merger to Manville Buildings Materials
Corporation, Manville Products Corporation, and Manville
Service Corporation, Manville International Canada, Inc.,
Manville Canada, Inc., Manville Investment Corporation,
Manville Properties Corporation, Allan-Deane Corporation,
Ken- Caryl Ranch Corporation, Johns-Manville Idaho, Manville
Canada Service Inc., and Sunbelt Contractors, Inc., Appellees.
In re JOHNS-MANVILLE CORPORATION, et al., Debtors.
 Nos. 402, 403, Dockets 87-5030, 87-5038.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 30, 1987.
Decided Jan. 19, 1988.
 
 John H. Faricy, Jr., Minneapolis, Minn. (Pustorino, Pederson, Tilton, & Parrington, Minneapolis, Minn., James J. Higgins, Boyar, Higgins & Hayden, New York City, on the brief), for appellants.
 Lowell Gordon Harriss, New York City (Laureen F. Bedell, Gregor Baer, Davis Polk & Wardwell, Herbert Stephen Edelman, Andrew A. Kress, Levin & Weintraub & Crames, New York City, on the brief), for appellees.
 Before NEWMAN, WINTER and MINER, Circuit Judges.
 JON O. NEWMAN, Circuit Judge:
 
 
 1
 MacArthur Company and Western MacArthur Company (collectively "MacArthur") appeal from an order of the District Court for the Southern District of New York (Whitman Knapp, Judge) affirming orders of the Bankruptcy Court (Burton R. Lifland, Chief Judge) entered in connection with the Chapter 11 proceeding of the Johns-Manville Corporation ("Manville"). The orders of the Bankruptcy Court approved settlements between Manville and various of its insurance carriers and enjoined all suits against the insurers related to the settled policies. MacArthur, a distributor of Manville's asbestos, claims to be a coinsured under the settled policies by virtue of "vendor endorsements" contained in the policies. It argues that the Bankruptcy Court was without jurisdiction or authority to issue the injunctive orders, which prevent it from suing the insurers. We conclude that the Bankruptcy Court had jurisdiction over the insurance policies as property of the debtor's estate. Moreover, the court had authority to issue the injunctive orders pursuant to its power to dispose of a debtor's property free and clear of third-party interests and to channel such interests to the proceeds of the disposition. The order of the District Court is affirmed.
 
 Background
 
 2
 On August 26, 1982, Johns-Manville Corporation filed a petition for reorganization under Chapter 11 of the United States Bankruptcy Code. The filing was largely in response to Manville's potential liability to persons with latent asbestos-related disease caused by Manville's asbestos products. As has been explained during earlier proceedings in the Manville reorganization, Manville faced the possibility of suits by tens of thousands of as yet unknown asbestos victims, amounting to a potential liability of more than two billion dollars. See Johns-Manville Corp. v. Asbestos Litigation Group (In re Johns-Manville Corp.), 26 B.R. 420 (Bankr.S.D.N.Y.1983), aff'd, 40 B.R. 219 (S.D.N.Y.1984); GAF Corp. v. Johns-Manville Corp. (In re Johns-Manville Corp.), 26 B.R. 405 (Bankr.S.D.N.Y.1983), aff'd, 40 B.R. 219 (S.D.N.Y.1984).
 
 
 3
 At the time of its Chapter 11 filing, Manville was engaged in extensive litigation with its insurance carriers concerning its coverage for asbestos-related liabilities. In order to avoid the uncertainty of the insurance litigation and to provide funding for its plan of reorganization, Manville endeavored to settle its insurance claims. Between 1984 and 1986, the insurers agreed to settle with Manville for approximately $770 million. The settlements provided that, in exchange for cash payments, the insurers would be relieved of all obligations related to the disputed policies and the insurers would be protected from claims based on such obligations by injunctive orders of the Bankruptcy Court. The insurers are entitled to terminate the settlements if the injunctive orders are not issued or if they are set aside on appeal. Since the insurance settlements are a cornerstone of Manville's proposed plan of reorganization, see Johns-Manville Corp. v. Asbestos Litigation Group (In re Johns-Manville Corp.), 33 B.R. 254, 267 (Bankr.S.D.N.Y.1983), the Bankruptcy Court's orders are a critical part of the entire reorganization.
 
 
 4
 MacArthur is a distributor of Manville's asbestos products. It claims to be a coinsured under some of Manville's insurance policies pursuant to "vendor endorsements" contained in the policies. The vendor endorsements entitle distributors to insurance coverage for liability resulting from their sale of Manville's products. The endorsements are subject to the payment limits and other restrictions of the underlying policies; thus, if the product liability aggregate limits in the underlying Manville policies have been exhausted, the insurer has no independent obligation to pay distributors on product liability claims. It is disputed whether Manville's policy limits have been exhausted.
 
 
 5
 MacArthur objected to the Bankruptcy Court's approval of the insurance settlements on the ground that the proposed injunctions would impair its rights under the vendor endorsements.[1] MacArthur argued that it had recently been sued because of its sale of Manville's asbestos, that it was entitled to coverage from the settling insurers, and that its contractual rights could not lawfully be extinguished by the Bankruptcy Court's injunctive orders. MacArthur suggested that the Bankruptcy Court's orders would be permissible only if the Court extended the protection of the injunction to MacArthur, that is, if asbestos-related suits were barred against MacArthur as well as against the settling insurers. The Bankruptcy Judge dismissed MacArthur's objections from the bench, reasoning that its "interest in the policies is highly speculative" and that any claim it had, based on Manville's insurance, could be asserted in the Bankruptcy Court. By orders dated December 18, 1986, and January 14, 1987, the Bankruptcy Court approved the insurance settlements and enjoined all suits against the insurers "based upon, arising out of, or related to the [settled] policies." The Bankruptcy Court's orders further provided that the settlement fund was subject to the continuing jurisdiction of the Bankruptcy Court and that law suits subject to the injunction "are transferred, and shall attach, solely to the Settlement Fund." On July 15, 1987, the District Court affirmed the orders of the Bankruptcy Court. This appeal followed.
 
 Discussion
 
 6
 MacArthur's primary contention on appeal is that the Bankruptcy Court lacked jurisdiction and authority to enjoin suits against Manville's insurers. MacArthur argues that the injunctive orders constitute a de facto discharge in bankruptcy of non-debtor parties not entitled to the protection of Chapter 11. MacArthur insists that its interests in the vendor endorsements is a contractual right solely between it and the non-debtor insurance companies and is therefore beyond the reach of the Bankruptcy Court. The flaw in MacArthur's reasoning is that the injunctive orders do not offer the umbrella protection of a discharge in bankruptcy. Rather, they preclude only those suits against the settling insurers that arise out of or relate to Manville's insurance policies. Moreover, claims against the insurers based on Manville's policies are not extinguished; they are simply channeled away from the insurers and redirected at the proceeds of the settlement. The Bankruptcy Court properly issued the orders pursuant to its equitable and statutory powers to dispose of the debtor's property free and clear of third-party interests and to channel those interests to the proceeds thereby created.
 
 
 7
 It is well established that a bankruptcy court has jurisdiction over all of the property of the debtor's estate, wherever located. See Straton v. New, 283 U.S. 318, 320-21, 51 S.Ct. 465, 466, 75 L.Ed. 1060 (1931) (purpose of bankruptcy law is "to place the property of the bankrupt, wherever found, under the control of the court, for equal distribution among the creditors"); Loewi Realty Corp. v. Chanticleer Assoc., Ltd. (In re Chanticleer Assoc., Ltd.), 592 F.2d 70, 73-74 (2d Cir.1979) (bankruptcy court's "power to preserve its jurisdiction by enjoining proceedings that would remove property from the bankrupt estate is fundamental"); 28 U.S.C.A. Sec. 1334(d) (West Supp.1987) (district court sitting in bankruptcy has jurisdiction over "all of the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate"); 28 U.S.C. Sec. 157(b)(2) (Supp. III 1985) ("core proceedings" in which bankruptcy judges may issue final orders include proceedings related to the property of the estate). The Bankruptcy Code broadly defines property of the estate as "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. Sec. 541(a)(1) (1982). This provision has been construed expansively: "The scope of this paragraph [section 541(a)(1) ] is broad. It includes all kinds of property, including tangible or intangible property, causes of action ... and all other forms of property currently specified in Section 70a of the Bankruptcy Act." United States v. Whiting Pools, Inc., 462 U.S. 198, 205 n. 9, 103 S.Ct. 2309, 2313 n. 9, 76 L.Ed.2d 515 (1983) (quoting S.Rep. No. 989, 95th Cong., 2d Sess. 82 (1978), reprinted in 1978 U.S.Code Cong. & Admin. News 5787, 5868). In Whiting Pools, the Supreme Court held that the property of the estate includes assets seized by a creditor prior to the filing of the bankruptcy petition. The Court explained that "[b]oth the congressional goal of encouraging reorganizations and Congress' choice of methods to protect secured creditors suggest that Congress intended a broad range of property to be included in the estate." 462 U.S. at 204, 103 S.Ct. at 2313; accord Johns-Manville Corp. v. Asbestos Litigation Group (In re Johns-Manville Corp.), supra, 40 B.R. at 230.
 
 
 8
 Numerous courts have determined that a debtor's insurance policies are property of the estate, subject to the bankruptcy court's jurisdiction. During earlier proceedings in the present case, the Bankruptcy Court held that the automatic stay provision of the Code, 11 U.S.C. Sec. 362(a) (1982 & Supp. IV 1986), which prevents suits against the debtor or his property after a petition is filed, authorized an injunction that barred claims by asbestos victims against Manville's insurers in jurisdictions allowing direct actions against the insurers. Johns-Manville Corp. v. Asbestos Litigation Group (In re Johns-Manville Corp.), supra, 26 B.R. at 435-36 (on rehearing), aff'd, 40 B.R. at 230-31. The Court found that Manville's insurance policies and their proceeds were "substantial property of the Manville estate which will be diminished if and to the extent that third party direct actions against the insurance carriers result in plaintiffs' judgments." 26 B.R. at 435. The Fifth Circuit has followed this analysis, enjoining suits against Manville's insurers in Louisiana, a state that permits direct actions. See In re Davis, 730 F.2d 176, 184 & n. 25 (5th Cir.1984). Other courts are in agreement. E.g. A.H. Robbins Co. v. Piccinin (In re A.H. Robbins Co.), 788 F.2d 994, 1001-02 (4th Cir.), cert. denied, --- U.S. ----, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986); Pearl-Wick Corp. v. John Hancock Mutual Life Insurance Co. (In re Pearl-Wick Corp.), 15 B.R. 143, 148 (Bankr.S.D.N.Y.1981), aff'd, 26 B.R. 604 (S.D.N.Y.), aff'd, 697 F.2d 295 (2d Cir.1982); In re Moskowitz, 13 B.R. 357, 360 (Bankr.S.D.N.Y.1981); Brenham v. Deerfield Organization, Inc. (In re Norman Industries), 1 B.R. 162, 166 (Bankr.W.D.La.1979).
 
 
 9
 MacArthur insists that while Manville's interests in the settled insurance policies may be subject to the jurisdiction of the Bankruptcy Court, those interests are separate and distinct from MacArthur's own contractual rights, which the Bankruptcy Court may not impair. MacArthur contends that because its own rights are separate from Manville's, its claims under the vendor endorsements are too remote from the Chapter 11 proceeding to permit the Bankruptcy Court to exercise jurisdiction. See Northern Pipeline Construction Co. v. Marathon Pipeline Co., 458 U.S. 50, 83-87, 102 S.Ct. 2858, 2877-80, 73 L.Ed.2d 598 (1982); 1 King, Collier on Bankruptcy p 3.01 at 3-29 (15th ed. 1987). MacArthur's position is unsupported in the record. The vendor endorsements cover only those liabilities resulting from the vendor's status as a distributor of Manville's products. The endorsements are limited by the product liability limits of the underlying Manville policies and are otherwise subject to all of the terms of the underlying policies. MacArthur's rights as an insured vendor are completely derivative of Manville's rights as the primary insured. Such derivative rights are no different in this respect from those of the asbestos victims who have already been barred from asserting direct actions against the insurers. See In re Davis, supra. MacArthur asserts contractual obligations whereas the direct action plaintiffs' claims sounded in tort; nevertheless, in both instances, third parties seek to collect out of the proceeds of Manville's insurance policies on the basis of Manville's conduct. In both cases, plaintiffs' claims are inseparable from Manville's own insurance coverage and are consequently well within the Bankruptcy Court's jurisdiction over Manville's assets. See In re Davis, 730 F.2d at 183 (rejecting claim that direct actions against insurers have no reasonable nexus with bankruptcy proceedings).
 
 
 10
 Having properly exercised jurisdiction over the insurance policies, the Bankruptcy Court had the authority to approve the settlements and to channel claims arising under the policies to the proceeds of the settlement. In Van Huffel v. Harkelrode, 284 U.S. 225, 52 S.Ct. 115, 76 L.Ed. 256 (1931), the Supreme Court explained that even absent express statutory authority, the Bankruptcy Court had the inherent equitable power to sell a debtor's property and to transfer third-party interests to the proceeds of the sale. 284 U.S. at 227-28, 52 S.Ct. at 116. See also Ray v. Norseworthy, 90 U.S. (23 Wall.) 128, 134-35, 23 L.Ed. 116 (1874) (court may sell bankrupt's property encumbered by third-party claims as long as third parties retain their respective priorities in the proceeds of the sale); Fierman v. Seward National Bank, 37 F.2d 11, 13 (2d Cir.1930) ("When the bankrupt's property was sold free of liens, the liens upon the property became rights against the substituted proceeds of sale, and claimants to this fund were obliged to assert their rights by applying to the court in whose custody it was."); In re Penn Central Transportation Co., 383 F.Supp. 1128, 1130 (E.D.Pa.1974) (power of a reorganization court to transfer interests in debtor's property to the proceeds of a sale is well established). The Bankruptcy Code provides statutory authority for the channeling orders. 11 U.S.C. Sec. 363(f) (1982 & Supp. IV 1986) permits, under certain circumstances, sales of property in the debtor's estate "free and clear of any interest in such property of an entity other than the estate." One of the circumstances permitting such sales is that the third-party interest be in bona fide dispute. 11 U.S.C. Sec. 363(f)(4). In the present case, such a dispute exists because Manville claims that the product liability limits on the policies to which the vendor endorsements attach have been exhausted. The Bankruptcy Judge appears to have substantially accepted Manville's contention, as he found that MacArthur's interest in the settled policies was "highly speculative."
 
 
 11
 The injunctive orders issued by the Bankruptcy Court were necessary to effectuate the Court's channeling authority, that is, to make sure that claims to Manville's insurance proceeds were, in fact, channeled to the settlement fund and could not be asserted directly against the insurers. The authority to issue the injunction is thus a corollary to the power to dispose of assets free and clear and to channel claims to the proceeds.
 
 
 12
 The Bankruptcy Court, having jurisdiction over the property of the Bankrupt, and having jurisdiction to order the sale of the Bankrupt's property and to determine the nature, extent and validity of liens asserted against the proceeds, had jurisdiction to enjoin a lien-holder from attempting to assert his lien against property in the hands of a purchaser who has acquired from the Bankruptcy Court a title free and clear of liens and encumbrances.
 
 
 13
 Whitehead & Kales Co. v. Dempster (In re Wiltse Bros. Corp.), 361 F.2d 295, 299 (6th Cir.1966) (citing Van Huffel v. Harkelrode, supra ). Additional authority for the injunction is to be found in section 105(a) of the Bankruptcy Code, which permits the Bankruptcy Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. Sec. 105(a) (Supp. IV 1986). This provision has been construed liberally to enjoin suits that might impede the reorganization process. See Manville Corp. v. Equity Security Holders Committee (In re Johns-Manville Corp.), 801 F.2d 60, 64 (2d Cir.1986); In re Davis, supra, 730 F.2d at 183-84. In this case, the Bankruptcy Court found as a fact that to permit actions against Manville's insurers arising from Manville's policies would adversely affect property of the estate and would interfere with reorganization. Johns-Manville Corp. v. Asbestos Litigation Group, supra, 26 B.R. at 435-36.
 
 
 14
 Admittedly, the insurance settlement and accompanying injunction in this case are not precisely the same as the traditional sale of real property free and clear of liens followed by a channeling of the liens to the proceeds of the sale. E.g. Van Huffel v. Harkelrode, supra. Here, the property of the estate at issue (insurance policies) was not technically "sold"; rather, Manville liquidated its interest via a voluntary settlement. Moreover, the claims on the property--MacArthur's interest under the vendor endorsements, or in the earlier stages of this litigation, health claimants' direct actions--are different from the liens on real property that are traditionally the subject of the bankruptcy court's equitable channeling power. But cf. Forde v. Kee-Lox Manufacturing Co., 437 F.Supp. 631, 634-35 (W.D.N.Y.1977) (trustee permitted to sell debtor's estate free and clear of a civil rights claim), aff'd on other grounds, 584 F.2d 4 (2d Cir.1978); Rubinstein v. Alaska Pacific Consortium (In re New England Fish Co.), 19 B.R. 323, 329 (Bankr.W.D.Wash.1982) (same). Nevertheless, the underlying principle of preserving the debtor's estate for the creditors and funneling claims to one proceeding in the bankruptcy court remains the same. The principle is a fundamental part of the bankruptcy law. Particularly since the insurance settlement/injunction arrangement was essential in this case to a workable reorganization, it falls well within the bankruptcy court's equitable powers "which traditionally 'have been invoked to the end that ... substance will not give way to form, that technical considerations will not prevent substantial justice from being done.' " In re UNR Industries, Inc., 725 F.2d 1111, 1119 (7th Cir.1984) (quoting Pepper v. Litton, 308 U.S. 295, 305, 60 S.Ct. 238, 244, 84 L.Ed. 281 (1939)).
 
 
 15
 MacArthur contends that the Bankruptcy Court's orders are unfair. MacArthur asserts that it has been forced to accept the burden of asbestos victims' suits without the protection of the insurance coverage to which it is entitled. Even if we assume that MacArthur could show that it has a valid claim against the insurers, MacArthur is not left without a remedy: It may proceed in the Bankruptcy Court against the $770 million settlement fund. It has long been recognized that when a debtor's assets are disposed of free and clear of third-party interests, the third party is adequately protected if his interest is assertable against the proceeds of the disposition. See Ray v. Norseworthy, supra, 90 U.S. at 134-35; S.Rep. No. 989, 95th Cong., 2d Sess. 56 (1978), reprinted in 1978 U.S.Code Cong. & Admin. News 5787, 5842 (committee report on 11 U.S.C. Sec. 363(f)) ("Most often, adequate protection in connection with a sale free and clear of other interests will be to have those interests attach to the proceeds of the sale."). In the present case, the injunctive orders of the Bankruptcy Court make clear that claims arising from the settled insurance policies attach to the settlement fund. It may well be that MacArthur would prefer to assert its interest in Manville's property in a proceeding other than that in the Bankruptcy Court, but such a result is not required by the bankruptcy law.
 
 
 16
 We have considered MacArthur's contention that it was denied due process of law because it received notice of the insurance settlements only after the settlements had been negotiated. This contention is without merit because MacArthur and all other interested parties were provided with notice and a hearing before the settlements were approved by the Bankruptcy Court. The notice of proposed settlements issued by the Bankruptcy Court met the requirements of due process. See Handschu v. Special Services Division, 787 F.2d 828, 832-33 (2d Cir.1986).
 
 
 17
 The decision of the District Court affirming the orders of the Bankruptcy Court is affirmed.
 
 
 
 [1]
 Neither MacArthur nor any other party has challenged the fairness of the $770 million settlement amount