**In re PRUDENTIAL LINES, INC., Debtor.**

**The OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

**and**

**Cold Spring Shipping, L.P., Plaintiffs,**

**v.**

**PSS STEAMSHIP COMPANY, INC., Defendant.**

**Bankruptcy No. 86B–11773 (HCB). Adv. No. 89–6430A.**

United States Bankruptcy Court, S.D. New York.

Dec. 19, 1989.

As Amended Jan. 4, 1990.

White & Case, New York City, for the Official Committee of Unsecured Creditors; by Allan L. Gropper, Barbie D. Lieber.

Wilmer, Cutler & Pickering, Washington, D.C., for Cold Spring Shipping, L.P.; by Timothy B. Dyk, William J. Perlstein, Philip D. Anker, Sharon A. Pocock.

Battle Fowler, New York City, for PSS S.S. Co., Inc.; by W. Bruce Johnson, and Nancy J. Mrazek.

## DECISION

HOWARD C. BUSCHMAN, III, Bankruptcy Judge.

Before the Court are the respective submissions of the parties regarding the judgment to be entered implementing this Court's decision of December 4, 1989, 107 B.R. 832 (Bankr.S.D.N.Y.1989) ("Decision") and a decision of December 14, 1989, consolidating, pursuant to FED.R.CIV.P. Rule 65(a)(2), the hearing held on the motion for a preliminary injunction with the trial on the merits. The issue to be decided is whether the Court should enter a permanent injunction barring defendant PSS Steamship Company ("PSS") from claiming a worthless stock deduction under the Internal Revenue Code for 1988 or any other tax year ending prior to the effective date of the confirmation of a reorganization plan. The claiming of the deduction for any such year would have the effect of eliminating net operating loss ("NOL") carryover rights of the debtor, Prudential Lines, Inc. ("PLI"). *See*, Decision at 841–42, note 18.

### I

Familiarity with this Court's decision of December 4, 1989 is assumed. There it was held that the claiming of a worthless stock deduction by a sole shareholder of a debtor-in-possession, having the consequence of eliminating a corporate debtor's NOL carryover rights, was barred by the

automatic stay contained in § 362(a)(3) of Title 11 of the United States Code (the "Code") in that it was an exercise of control over estate property. Decision at 835–42.

Shortly after that decision, plaintiffs proceeded to confirmation of their proposed plan. No objection to confirmation was received and the plan was confirmed by order dated December 15, 1989. PSS currently owns 100% of the issued and outstanding stock of PLI. The plan provides that, on its effective date, all stock previously issued by PLI will be cancelled and that property of the estate will be returned to PLI.

Because the permanent injunction requested by plaintiffs would bar PSS from claiming a worthless stock deduction after confirmation, PSS asserts that such an injunction is impermissible. It observes that § 362(c)(1) of the Code provides that "the stay of an act against property of the estate ... continues until such property is no longer property of the estate" and that § 1141(b) of the Code removes all property from the estate on confirmation or at the time provided in the plan and vests it in the debtor or, if the plan so provides, in other entities. Thus, PSS argues, the automatic stay no longer applies and it cannot be enjoined from violating the stay. In effect, PSS argues that, on confirmation, the branch of the complaint asserting a violation of the automatic stay became moot because the stay cannot be extended after confirmation.

These assertions, however, ignore that the relief plaintiffs seek is not an extension of the automatic stay to bar acts having effect only after confirmation. They seek only to bar the claiming of a deduction for tax years ending prior to confirmation and thus retroactively eliminating PLI's NOL carryover rights protected by the automatic stay. They assert that not to enjoin the claiming of the deduction reduces the automatic stay to a nullity.

## II

The principal purpose of the automatic stay of acts against property of the estate, set forth in § 362(a)(3) of the Code and elsewhere in § 362(a), is to preserve that property for distribution or use in reorganization of the debtor. Decision at 842; *Pension Benefit Guaranty Corp. v. The LTV Corporation (In re Chateaugay Corp.)*, 87 B.R. 779 (S.D.N.Y.1988), *aff'd*, 875 F.2d 1008 (2d Cir.), *cert. granted on another issue*, — U.S. —, 110 S.Ct. 321, 107 L.Ed.2d 311 (1989); *Continental Air Lines, Inc. v. Hillblom*, 61 B.R. 758 (S.D. Tex.1986). On confirmation of a reorganization plan, that purpose is accomplished to the degree that property so preserved is to be distributed pursuant to the plan or to be utilized by the reorganized debtor in carrying out the plan free of pre-bankruptcy claims and interests except as the plan provides.

This concept is expressed in § 1141(c) of the Code. That section generally provides that, unless the plan or confirmation order provides differently, "the property dealt with by the plan is free and clear of all claims and interests of creditors, equity security holders and of general partners of the debtor." Section 1141(c) thus decrees that estate property preserved during the course of the proceeding remains so preserved from attack by parties in interest to the bankruptcy case.[1]

---

1. The term "creditors" is defined to consist of holders of pre-petition claims, 11 U.S.C. § 101(9), and the reference to equity security holders means shareholders of the debtor, 11 U.S.C. § 101(16), even though the rights and interests of shareholders could be terminated under § 1141(d)(1)(B) of the Code. Section 1141(c) apparently does not embrace administrative creditors, *i.e.*, those creditors whose claims arose post-petition and prior to confirmation, for their claims are to be paid in full on the effective date of the plan. *See*, 11 U.S.C. § 1129(a)(9). Nor does it embrace post-confirmation creditors, whose dealings with the debtor after confirmation, gave rise to post-confirmation claims. Only pre-petition and administrative claims are resolved in the bankruptcy process. *E.g.*, *In re Herron*, 60 B.R. 82 (Bankr. W.D.La.1986); *In re Korgan*, 52 B.R. 557 (Bankr.D.Or.1985). Upon confirmation, the reorganized debtor returns to the commercial world without protection from post-confirmation creditors. *In re Pan American School of Travel Inc.*, 47 B.R. 242, 244 (Bankr.S.D.N.Y. 1985).

These sections assist in implementing the general purposes of a Chapter 11 case: to preserve estate property prior to confirmation thereby enabling all parties in interest to make intelligent decisions as to, *inter alia*, whether the debtor should be liquidated or reorganized, the form of reorganization, and appropriate distributions to creditors, and to enable the plan to work with the debtor's property free from prior claims of creditors and interests of stockholders except as provided in the plan.

This statutory scheme would be defeated were the protection of estate property afforded by the automatic stay prior to confirmation of a plan subject to being retroactively undermined by a post-confirmation act relating back to the period when the automatic stay applied. The property that a debtor would distribute to creditors or use as a reorganized entity will have turned to sand. The expectations of parties in interest as to return under a plan, reasonably based on preservation of property of the estate afforded by the automatic stay, will have been dashed. The underpinnings of the plan process, based on decisions made with respect to that property and its value, will have been annulled. The automatic stay of acts against property of the estate will have been subverted.

Totally different are post-confirmation acts against property by post-confirmation creditors. Section 1141(d) does not protect the debtor's property from them. *See*, note 1 *supra*. But this is not a case where a post-confirmation creditor of a debtor seeks to obtain a judgment lien or where a secured creditor, allowed by a plan to retain its lien on debtor property, seeks post confirmation, to foreclose its lien upon the debtor's post-confirmation default. In those instances, the acts are not retroactive. They have effect only post-confirmation when the judgment is entered or foreclosure ordered.[2]

Here, because PSS threatens to claim a worthless stock deduction on its 1988 tax return, an ownership change under § 382 of the Internal Revenue Code, 26 U.S.C. § 382 (1988), would be deemed to have occurred as of December 31, 1988, the end of PSS 1988 tax year, since PSS still held stock in PLI. 26 U.S.C. § 382(g)(4)(D); *see*, Decision at 841–42, note 18. If PSS is permitted to do so, PLI's NOL carryovers will be eliminated as of that date—a date well within the period covered by the automatic stay. Since, as we have held, the automatic stay bars the termination of a corporate debtor's NOL carryover rights by the claiming of a worthless stock deduction, the claiming of such a deduction post-confirmation must be enjoined since its effect relates back to a period covered by the automatic stay. Any other result would destroy the preservative purpose of the automatic stay, interfere with the debtor's reorganization, and abuse the statutory scheme.

Fairly analogous is *MacArthur Co. v. Johns–Manville Corp. (In re Johns–Manville Corp.)*, 837 F.2d 89 (2nd Cir.1988). There the bankruptcy court, during the course of the bankruptcy case, had approved settlements between the debtor and some of its insurance carriers whose policies were property of the estate, permanently enjoined third parties, including co-insureds, from proceeding against the policies and limited them to proceeding against the settlement fund. On appeal, the Second Circuit upheld the injunction. It ruled that the rights of a co-insured against the policy were completely derivative of the debtor's rights as the primary insured, 837 F.2d at 92, upheld the bankruptcy court's finding that not to enter an injunction would adversely affect estate property and interfere with reorganization, 837 F.2d at 93, and observed that the "underlying prin-

---

**2.** Nor is this a case, like *Inforex Inc. v. Burridge (In re Inforex, Inc.)*, 26 B.R. 515 (Bankr.D.Mass. 1983), where purchasers and sellers of the debtor's securities were permitted to assert causes of action under the securities laws against the debtor's officers and directors based on their conduct before and during a Chapter 11 case. The court held that termination of shareholders' interests by virtue of confirmation did not preclude a purchaser or seller of stock from maintaining a cause of action against non-debtors for having been damaged in a securities transaction. 26 B.R. at 520. That cause of action, unlike the claiming of the deduction here, was not barred by the automatic stay. Nor was recovery sought from the debtor's property.

ciple of preserving the debtor's estate for the creditors and funnelling claims to one proceeding in the bankruptcy court ... is a fundamental part of bankruptcy law ..." 837 F.2d at 94.

Here, PSS's right to take a worthless stock deduction is completely derivative of the losses incurred by PLI. Without those losses PLI would not be insolvent and its stock would not be worthless. The claiming of a worthless stock deduction would affect estate property by terminating PLI's NOL carryovers based on those losses. While plaintiffs have proceeded to confirmation without resolution of the instant issue and it cannot be said that reorganization will totally fail absent preservation of PLI's NOL carryovers, it remains undisputed that the plan proponents expect to utilize NOL carryovers to increase returns to creditors. Here, as in *MacArthur,* entry of a permanent injunction structured to avoid retroactive violation of the automatic stay falls "well within the bankruptcy court's equitable powers which traditionally have been invoked to the end that ... substance will not give way to form...." 837 F.2d at 94, quoting from *In re UNR*

*Industries, Inc.,* 725 F.2d 1111, 1119 (7th Cir.1984).[3]

To this, PSS responds that permanently enjoining it from taking a worthless stock deduction post-confirmation impermissibly employs § 105(a) of the Bankruptcy Code. That section empowers the bankruptcy courts to enter orders "necessary or appropriate to carry out the provisions" of Title 11. 11 U.S.C. § 105(a). We agree that this section does not grant a blank cheque and that it is not to be employed "in derogation of specific rules." *In re Pan American School of Travel,* 47 B.R. 242, 244 (Bankr. S.D.N.Y.1985). But the injunction sought here is carefully tailored to the automatic stay because the worthless stock deduction that PSS seeks to take is for its 1988 tax year, a year ending prior to the effective date of the plan, and will have the effect of terminating PLI's NOL carryovers as of a time when the automatic stay was in place. Plaintiffs do not seek to bar PSS from claiming a worthless stock deduction for any tax year ending after the effective date of the plan. Since the plan provides for cancellation of PSS' stock in PLI, PSS will not hold that stock at the end of any such tax year and PLI's NOL carryovers will

---

**3.** Disputing that the requisites for a permanent injunction have been established, PSS argues only that plaintiffs have consistently urged that they know exactly how much the NOL is worth and that plaintiffs would proceed with the Joint Plan irrespective of the status of the NOL. In determining whether to grant a permanent injunction, the court will consider preliminarily whether (1) there is real danger that the act complained of will occur; (2) there is more than a mere possibility or fear that the injury alleged will occur; and (3) there is no adequate legal remedy, *i.e.,* one that is as plain, complete, practical and efficient as the injunction. *State of Connecticut v. Commonwealth of Massachusetts,* 282 U.S. 660, 674, 51 S.Ct. 286, 291, 75 L.Ed. 602 (1931); *General Fireproofing Co. v. Wyman,* 444 F.2d 391 (2d Cir.1971); Wright and Miller, 11 *Federal Practice and Procedure* §§ 2942 and 2944 (Supp.1983). The third prong is satisfied by, *inter alia,* a showing the plaintiff would suffer irreparable damages in the absence of injunctive relief or that an award of damages would be speculative, *i.e.,* difficult, if not impossible, to measure. *Id.* at § 2944. Those elements being established, the court will grant injunctive relief if, in balancing the interests of the parties, the hardship to plaintiff if no injunction is issued outweighs any hardship to

defendant if the injunction is granted, as may be mitigated by requiring the plaintiff to post a security bond. *Id.* at § 2942.

PSS has indicated that its return for the 1988 tax year in which it claims the deduction will be filed immediately upon the lifting of any legal bar. Decision at 835, note 5. PLI has shown and PSS has not rebutted that PLI's ability to carry forward its NOL would be destroyed by claiming the deduction in a tax year prior to the effective date of the plan. Decision at 841–42, note 18. Lack of an adequate legal remedy is found in that this deprivation is not compensable in damages, since its use is dependent on future income and income from possible acquisitions, Decision at 835, note 6, as well as in that irreparable harm would result from a post-confirmation act retroactively violating the automatic stay.

The balance of hardships tips clearly in favor of the estate and reorganized PLI. In the face of the complete destruction of PLI's NOL carryovers, PSS has advanced no cognizable reason why it may not claim the deduction in a tax year after 1988 in accordance with the tax laws and thereby take advantage of any carrybacks or carryovers it may have, without threatening PLI's NOL carryovers.

not be terminated under § 382 of the Internal Revenue Code. Decision at 841–42, note 18. It is because PSS seeks to claim a worthless stock deduction for a tax year ending prior to the effective date of the plan that the claiming of the deduction for such years must be permanently enjoined.

The foregoing constitute this Court's additional findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

Judgment consistent with this decision is to be entered.