**In re MRS. WEINBERG'S KOSHER FOODS, INC., f/k/a Shofar Kosher Foods, Inc., Debtor.**

**No. 96 B 44620(SMB).**

United States Bankruptcy Court,
S.D. New York.

May 28, 2002.

Serchuk & Zelermyer, LLP, Benjamin Zelermyer, of counsel, White Plains, NY, Special Litigation Counsel to Trustee.

Patterson Belknap Webb & Tyler, LLP, Philip R. Forlenza, of counsel, New York City, for Pitney, Hardin, Kipp & Szuch, LLP.

Thomas Fitzpatrick, New York City, for Robert Burrick.

## MEMORANDUM DECISION AND ORDER GRANTING APPROVAL OF SETTLEMENT AND CLARIFYING INJUNCTIVE RELIEF

STUART M. BERNSTEIN, Chief Judge.

Barbara Balaber–Strauss, the chapter 7 trustee of Mrs. Weinberg's Kosher Foods, Inc., f/k/a Shofar Kosher Foods, Inc. (the "debtor"), seeks approval of a settlement between the estate on the one hand, and Pitney, Hardin, Kipp & Szuch, LLP ("Pitney"), the former counsel to the debtor, and Robert Burrick, Esq., a former Pitney partner, on the other. The settlement is unremarkable except for one aspect: it contains a limited injunction that restricts third-parties from bringing certain types of claims against Pitney and Burrick. Although no one has objected to the settlement, the Court has independently reviewed it, and concluded that it should be approved with some clarification regarding the scope of the injunction.

## BACKGROUND

### A. The Transaction

The underlying dispute arises from the transfer of virtually all of the debtor's assets under dubious circumstances. At all relevant times, the debtor, a Delaware corporation, was engaged in the manufacture and distribution of kosher food products. It was owned by Phoenix Commonwealth Holdings, Corp. ("Phoenix"), and controlled by Pedro Bolona, Alan Moore and Jack Gray. (*See Trustee's Application for Approval of Settlement, Extension of Bar Date and Approval of Notice by Publication*, dated January 4, 2002 ("*Applica-

tion*"), ¶¶ 14–15, 28.) Pitney served as the debtor's outside counsel in connection with the transaction at issue, and Burrick was the partner in charge. (*See id.* ¶ 29.)

In 1995, the debtor sold substantially all of its assets to certain subsidiaries of the Sara Lee Corporation ("Sara Lee") for $8 million. (Application ¶ 11.) The proceeds were deposited in a Pitney attorney trust account, and Pitney, the debtor, its three principals and Phoenix simultaneously entered into a disbursement agreement. (*Id.* ¶¶ 32–33.) The disbursement agreement required Pitney to transfer the proceeds from the firm's trust account in accordance with a disbursement schedule to be signed by the debtor, its principals and Phoenix. (*Id.* ¶ 34.)

Pitney never received the disbursement schedule. Instead, Bolona issued a written instruction to Burrick to transfer $5.3 million to an off shore account maintained at the Swiss Bank Corporation (Overseas) S.A. Panama by La Promessa Alimentari, S.p.A. ("La Promessa").[1] (*Id.* ¶ 35.) La Promessa, a foreign corporation, was formed by the debtor's principals just three weeks before the Sara Lee transaction. (*Id.* ¶ 37.) Burrick helped establish La Promessa and its Panamanian bank account, (*id.* ¶ 39), and according to the trustee, Burrick and Pitney knew that Bolona, Moore and Gray had created La Promessa for their personal benefit. (*Id.* ¶ 40.) The transfer rendered the debtor insolvent. (*Id.* ¶ 36.)

### B. The Bankruptcy and the Settlement

On August 28, 1996, an involuntary chapter 7 petition was filed against the debtor. (*Id.* ¶ 7.) After relief was ordered and a trustee appointed, the latter sued La Promessa. She obtained a default judgment in the amount of $5.3 million, but has

---

1. The record does not indicate what happened to the rest of the sale proceeds.

not been able to satisfy it. (*Id.* ¶ 13.) The trustee also obtained default judgments against Bolona and Phoenix which remain unsatisfied. (*Id.* ¶ 14.) Lastly, the trustee sued Moore and Gray, but that adversary proceeding was dismissed because the trustee lacked sufficient evidence to proceed on the date of the trial. (*Id.* ¶ 15.)

Eventually, the trustee hired special counsel to conduct a complete investigation of the Sara Lee transaction. (*Id.* ¶ 19.) Based upon special counsel's review of Pitney's role, the trustee is prepared to assert claims against Pitney and Burrick under various theories, including malpractice, breach of fiduciary duty and breach of contract.[2] (*Id.* ¶ 43.) Prior to bringing a lawsuit, the trustee negotiated the subject settlement with the targets. Under the Settlement Agreement, (*see id.* Ex. A), Pitney has agreed to pay the estate $1.5 million (*id.* Ex. A, ¶ 1), and withdraw its proof of claim in the amount of $264,076.92. (*Id.* Ex. A, ¶ 4.) The Settlement Agreement also includes mutual, general releases. (*Id.* Ex. A, ¶¶ 2, 3.)

Finally, the Settlement Agreement calls for an injunction against certain third party actions directed at Pitney or Burrick. Specifically, the settlement is conditioned on the entry of an order

> permanently enjoining all creditors of the Debtor from commencing or conducting any action or proceeding in any judicial or arbitral forum against Pitney or Burrick arising from the facts and transactions underlying the Pitney Claims[3]; and ... limiting the relief that may be obtained by such creditors on

account of the facts and transactions underlying the Pitney Claims to such creditors' rights to share in any distribution to creditors that the Trustee may make in the Bankruptcy Case.

(*Id.* Ex. A, ¶ 10; *see id.* Ex. B.)

Initially, the trustee sought approval of the Settlement Agreement without giving notice to the creditors. I declined to entertain the application, and directed her to mail notice to all "known creditors" at their last known addresses, and publish notice in the Star Ledger. (*Order Setting Hearing Date on Application for Approval of Settlement Agreement and Granting Related Relief,* dated January 29, 2002). (ECF Doc. No. 120.) The trustee gave the requisite notice, and no one has opposed the settlement.

## DISCUSSION

### A. Reasonableness of Settlement

 A proposed settlement will pass muster provided it does not fall "below the lowest point in the range of reasonableness." *Cosoff v. Rodman (In re W.T. Grant Co.),* 699 F.2d 599, 608 (2d Cir. 1983), *cert. denied,* 464 U.S. 822, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983); *In re Ionosphere Clubs, Inc.,* 156 B.R. 414, 426 (S.D.N.Y. 1993), *aff'd,* 17 F.3d 600 (2d Cir.1994); *In re Purofied Down Prods. Corp.,* 150 B.R. 519, 522 (S.D.N.Y.1993). At a minimum, the proposed settlement must be supported by adequate consideration, "fair and equitable" and in the best interest of the estate. *Ionosphere,* 156 B.R. at 426 (citing *Protective Committee for Indepen-*

---

**2.** The statute of limitations has been tolled pending the disposition of the motion to approve the Settlement Agreement.

**3.** The Settlement Agreement defines the "Pitney Claims" to include claims arising out of or relating to Pitney and Burrick's representation or dealings with the debtor in their roles

as counsel for the debtor or as disbursing agent, or their actions relating to the disbursement or transfer of the funds to the Panamanian bank account or the structuring of the Panamanian accounts for the debtor's principals. (*Application* Ex. A, ¶ C.)

*dent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968)); *see In re Texaco, Inc.,* 84 B.R. 893, 901 (Bankr.S.D.N.Y.), *appeal dismissed,* 92 B.R. 38 (S.D.N.Y. 1988). Reasonableness usually turns on several factors, including

> (1) the balance between the likelihood of the plaintiff's or the defendant's success should the case go to trial as compared with the benefits of the settlement without the expense and delay of a trial;

> (2) the prospect of a complex and protracted litigation if the settlement is not approved;

> (3) the proportion of the creditors who do not object to or who affirmatively support the proposed settlement;

> (4) the relative benefits to be received;

> (5) the nature and the breadth of releases to be issued as a result of the settlement; and

> (6) the extent to which the settlement is truly the product of arms' length bargaining and not the product of fraud or collusion.

*In re Best Prods. Co.,* 168 B.R. 35, 50 (Bankr.S.D.N.Y.1994) (citing *TMT Trailer Ferry,* 390 U.S. at 424, 88 S.Ct. 1157); *In re Fugazy,* 150 B.R. 103, 106 (Bankr. S.D.N.Y.1993), *appeal dismissed,* 177 B.R. 791 (S.D.N.Y.), *aff'd,* 68 F.3d 26 (2d Cir. 1995). Other relevant factors include the competency and experience of both the trustee and her counsel, *Purofied Down,* 150 B.R. at 522; *In re Drexel Burnham Lambert Group, Inc.,* 134 B.R. 493, 496 (Bankr.S.D.N.Y.1991); *see Nellis v. Shugrue,* 165 B.R. 115, 122 (S.D.N.Y.1994), although their recommendation alone is not dispositive. *See Ionosphere,* 156 B.R. at 426; *In re Lion Capital Group,* 49 B.R. 163, 190 (Bankr.S.D.N.Y.1985).

■ In reviewing the settlement, the court is not required to conduct a mini-trial of the compromised issues or claims. *Drexel,* 134 B.R. at 496–97. Instead, the court must apprise itself "of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated," and form "an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties in collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise." *See TMT Trailer Ferry,* 390 U.S. at 424–25, 88 S.Ct. 1157.

■ While the trustee's facts arguably support a *prima facie* case of malpractice, breach of fiduciary duty and breach of contract, she faces a potential obstacle to success. Under the doctrine of *in pari delicto,* "a plaintiff may not assert a claim against a defendant if the plaintiff bears fault for the claim." *In re R.F. Lafferty & Co.,* 267 F.3d 340, 354 (3d Cir.2001)(Pennsylvania law). *In pari delicto* includes, under its rubric, a variety of defenses to various causes of action under contract, tort and other theories that impute the agent's misconduct to the principal. *Id.* at 354–55; *see Cenco, Inc. v. Seidman & Seidman,* 686 F.2d 449, 453–54 (7th Cir.1982). If the wrongdoing is imputed, the principal is barred from suing, and the claim belongs to the creditors. *See Wight v. BankAmerica Corp.,* 219 F.3d 79, 86–87 (2d Cir.2000)(New York law); *Shearson Lehman Hutton, Inc. v. Wagoner,* 944 F.2d 114, 119–20 (2d Cir. 1991)(same). Some courts view *in pari delicto* as a question of standing, *see id.,* while others treat it as an equitable defense. *See In re R.F. Lafferty & Co.,* 267 F.3d at 346–47; *In re Dublin Secs., Inc.,* 133 F.3d 377, 380 (6th Cir.1997).

The trustee, who stands in the debtor's shoes, *see Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1093 (2d Cir.1995), contends that New Jersey law governs her claims. New Jersey's highest court has not addressed the doctrine of *in pari delicto* under the circumstances presented in this case. However, intermediate New Jersey appellate courts have indicated that it is limited, and a wrongdoer may not avoid liability based on his wrongful conduct by imputing the corporate agent's misconduct to the principal. *See, e.g., In re Liquidation of Integrity Ins. Co.*, 240 N.J.Super. 480, 573 A.2d 928, 941–42 (App. Div.1990); *Nischne v. Firestone Tire & Rubber Co.*, 116 N.J. Eq. 305, 173 A. 341, 342 (Ch.1934), *aff'd,* 119 N.J. Eq. 541, 183 A. 213 (1936).

Given the absence of a definitive answer under New Jersey law, the potential application of *in pari delicto* in this case is hard to predict, and presents a litigation risk. The trustee's investigation by special counsel revealed that the debtor's three principals acted in concert to cause Burrick to transfer the $5.3 million to La Promessa for their personal benefit. But for the New Jersey cases cited above, the case seems ripe for the application of *in pari delicto* to bar the trustee's contemplated lawsuit. In the end, the trustee recognized the uncertainty of New Jersey law and the trend in other jurisdictions toward the application of *in pari delicto*. (*See Memorandum of Law in Support of Trustee's Application for Approval of Settlement [etc.],* dated Jan. 4, 2002 ("*Trustee's Mem.*"), at 5–7.)

Several of the other factors also favor approving the settlement. No creditor has objected. The settlement reflects the re-sult of arms-length negotiations between able counsel who support it. Finally, it will result in the payment of a substantial sum to the estate. While the case does not appear to present complex issues for trial[4], the decision to settle for $1.5 million is fair, reasonable and in the best interest of the estate. Nevertheless, the release/injunction provisions extend to creditor claims, and this requires separate consideration of the channeling injunction.

## B. Injunction and Channeling Provisions

In appropriate circumstances, a bankruptcy court may, in approving a settlement between the trustee and a third party, enjoin claims against the settling party and channel those claims through the bankruptcy estate. In *MacArthur Co. v. Johns–Manville Corp. (In re Johns–Manville Corp.)*, 837 F.2d 89 (2d Cir.1988), *cert. denied,* 488 U.S. 868, 109 S.Ct. 176, 102 L.Ed.2d 145 (1988), the debtor, a manufacturer and distributor of asbestos products, faced thousands of personal injury, wrongful death and property damage asbestos-related claims and lawsuits. It entered into a settlement agreement with its insurers under which the insurers agreed to pay a substantial amount to the estate in exchange for an injunction restraining any lawsuits against the insurers related to the settled policies. *Id.* at 90.

The MacArthur Company, a distributor of the debtor's asbestos products, objected to the settlement. It asserted a contractual right to coverage under the settled policies pursuant to a "vendors endorsement," and argued that the injunction would impair that right. *Id.* at 91. The bankruptcy court approved the settlement over the

---

**4.** The trustee points to several difficulties of proof relating to the tracing of the transferred funds and obtaining records from overseas. (Trustee's Mem. 8.) The trustee's claims are straightforward and do not require her to follow or trace the proceeds. Her submissions do not explain why she needs this information, and it is not apparent to me.

objection, the district court affirmed, and MacArthur appealed to the Court of Appeals for the Second Circuit.

On appeal, MacArthur primarily argued that the bankruptcy court lacked the jurisdiction and authority to enjoin lawsuits against the debtor's insurers, and that the injunction granted a *de facto* discharge to non-debtor parties. *Id.* Rejecting this contention, the Court of Appeals stated that the bankruptcy court has jurisdiction over property of the debtor's estate, including its insurance policies, and may enjoin actions which threaten or diminish that property. *Id.* at 91–92. Another court in a "direct action" jurisdiction [5] had relied on this principle to enjoin actions by asbestos victims against the policies. *See id.* at 92 (citing *In re Davis,* 730 F.2d 176, 184 & n. 25 (5th Cir.1984)). Although MacArthur asserted separate contractual rights in the insurance policies under the vendor endorsements, its rights were derivative of Johns–Manville's, and no different than the barred claims asserted by the tort plaintiffs in the direct action jurisdictions. In both cases, third parties sought to collect out of Johns–Manville's insurance policies on the basis of Johns–Manville's conduct. *MacArthur,* 837 F.2d at 92–93.

Having properly exercised jurisdiction over the policies, the Court of Appeals identified two sources of authority for the channeling injunction. *Id.* at 93. First, 11 U.S.C. § 363(f) [6] allows the bankruptcy court to sell estate property free and clear of third party interests, and protect the third party by redirecting its interest to the proceeds of the sale. *Id.* Although the settlement was not a sale and MacArthur's contract claims were different from liens that are normally associated with channeling orders under § 363(f), the underlying principle—preserving the debtor's estate for the creditors and funneling the claims through the bankruptcy proceeding—remained the same. *Id.* at 94. Thus, MacArthur could assert its contract rights against the settlement fund, and while it might prefer to do this in another court, bankruptcy law did not require that result. *Id.* Second, 11 U.S.C. § 105(a) [7] permits the bankruptcy court to enjoin suits that might impede the reorganization process. *Id.* at 93. The insurance settlement/injunction arrangement was essential to a workable reorganization, and consequently, fell well within the bankruptcy court's equitable powers. *Id.* at 94.

The present case is a chapter 7, and the injunction is unnecessary to a reorganization. Nevertheless, the principles relied on by the *MacArthur* Court also support

---

**5.** A "direct action" jurisdiction (*e.g.,* Louisiana) allows an injured party to sue the insurer directly. *See MacArthur,* 837 F.2d at 92.

**6.** Section 363(f) provides:

The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—

(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

**7.** Section 105(a) states:

The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte,* taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

an injunction and channeling order in this case. The trustee proposes to settle the "Pitney Claims"—claims belonging to the estate, the debtor or the trustee. (*Application* Ex. A, ¶¶ C, D.) Ordinarily, only the trustee may prosecute these claims, and even though *in pari delicto* raises some question regarding the trustee's standing, the answer is murky. The New Jersey cases have indicated that *in pari delicto* is a limited defense which the third party wrongdoer cannot raise to impute the agent's misconduct to the principal. Further, the recent decision of the Third Circuit in *Lafferty*, though decided under Pennsylvania law, treated *in pari delicto* as an equitable defense. Defenses do not implicate principles of standing, and can be waived. Thus, the trustee can make a good faith argument in support of her right to bring these claims.

Just as the trustee can sell an asset encumbered by an interest subject to a *bona fide* dispute under § 363(f), she can settle the disputed claims (in essence, sell the claims to Pitney and Burrick). In addition, several years have passed since the transfer, but the record does not reflect that any creditor has ever sued Pitney or Burrick on account of the transfer. *Cf. Barner v. Sheldon*, 292 N.J.Super. 258, 678 A.2d 767, 771 (1995)(hypothesizing situations where the attorney for a non-bankruptcy trustee may owe a duty to the beneficiaries), *aff'd*, 292 N.J.Super. 157, 678 A.2d 717 (App.Div.1996). Lastly, no creditor has objected to the settlement or the proposed channeling injunction. In this regard, the terms of the injunction apply only to creditors of the debtor, and do not propose to restrict noncreditors who have no right to seek compensation from the settlement proceeds.

The conclusion that the trustee can settle the disputed claims leads to the additional conclusion that this Court can grant the channeling injunction although with one clarification. The trustee's potential claims involve direct injuries to the estate, and at most, derivative injuries to the creditors. The settlement extinguishes the settled claims, *see In re Ionosphere Clubs, Inc.*, 17 F.3d 600, 604 (2d Cir.1994), and in approving it, the court may enjoin creditors from prosecuting the settled claims derivatively in another court. *See id.* at 607. In addition, *MacArthur* permits the court to enjoin direct creditor claims which are nonetheless derivative of the estate's claims provided that the creditors can pursue their rights against the proceeds of the settlement. Thus, if the creditors acquired any direct claims (*e.g.*, breach of fiduciary duty) by virtue of the damage caused to the debtor—because the transfer impaired the ability to collect their debts—they can look to the proceeds of the settlement.

Nevertheless, the injunction called for by the Settlement Agreement is broad, and could lead to what I assume is an unintended result. The Settlement Agreement requires the entry of an order enjoining creditor suits against Pitney and Burrick "arising from the facts and transactions underlying the Pitney Claims." (*Application* Ex. A, ¶ 10.) The trustee states that this will not bar independent creditor claims, (*Trustee's Mem.* 12 n*), but I'm not convinced. It is conceivable—however unlikely—that a creditor might hold a personal, independent claim arising from the transfer of the $5.3 million that does not implicate an injury to the estate. For example, a creditor might claim that he was defrauded into dealing with the debtor (or La Promessa) based upon Pitney or Burrick's false representation to the creditor relating to the existence, availability or use of the $5.3 million. Although such a claim may well arise from the "facts and transactions underlying the Pitney Claims," it is personal to the creditor.

The trustee would lack the right to assert or settle such a claim, and similarly, the bankruptcy court would lack the power to enjoin its prosecution through a channeling injunction imposed as part of a settlement. *See In re Energy Coop., Inc.*, 886 F.2d 921, 930 (7th Cir.1989).

The parties' injunction should be clarified to reflect that it bars creditors from asserting claims against Pitney or Burrick that arose from the facts and transactions underlying the Pitney Claims, and are based upon or derivative of injuries to the debtor or the estate. *See id.* Assuming the foregoing accurately reflects the parties' agreement, they should submit a revised stipulation to the Court.

SO ORDERED.