**In re REMSEN PARTNERS, LTD., Debtor.**

**No. 98–46328 (RDD).**

United States Bankruptcy Court, S.D. New York.

May 9, 2002.

Duval & Stachenfeld, by Warren R. Graham, New York City, for Roy Babitt, Chapter 7 Trustee.

Dickstein, Shapiro, Morin & Oshinsky, LLP, by Daniel M. Litt, Washington, DC, for Southern Management Corporation.

Borovina & Marullo PLLC, by Anton J. Borovina, Melville, NY, pro se.

Shaw, Licitra, Bohner, Esernio, Schwartz & Pfluger, P.C., by John Hall, pro se.

William A. Teitelbaum, Old Brookville, NY, pro se.

*MEMORANDUM DECISION AND OR-
DER DENYING MOTION FOR OR-
DER SETTLING PENDING LITI-
GATION BETWEEN ESTATE AND
SOUTHERN MANAGEMENT COR-
PORATION*

ROBERT D. DRAIN, Bankruptcy
Judge.

The chapter 7 trustee (the "Trustee")
filed a motion on March 12, 2003 under
Bankruptcy Rule 9019(a) for approval of a
settlement with Southern Management
Corporation ("SMC"). Three claimants—
two former counsel to the above-captioned
debtor ("Remsen" or the "Debtor") and
the Debtor's former principal—objected,
and the Court held a hearing on the Trust-
ee's motion on April 8, 2003 and April 29,
2003.

Based on the parties' submissions and
arguments as well as the exhibits to the
pleadings and the documents admitted into
evidence at the hearing, the motion is de-
nied. The Trustee has not established
that the proposed settlement is in the best
interest of the estate and creditors or
within the range of reasonableness given
continued litigation risk, cost and delay.

## BACKGROUND

The underlying dispute involves fees al-
legedly owed to Remsen by SMC. By let-
ter dated November 14, 1991 (the "Reten-
tion Letter"), Remsen and SMC agreed
that Remsen would provide SMC with cer-
tain services in connection with a proposed
securitized financing. The Retention Let-
ter provided that after the closing (which
occurred on May 28, 1992) SMC would
"pay Remsen an annual consulting fee of
$150,000 to be paid in quarterly install-
ments for the outstanding term of the
[financing]." Retention Letter ¶ 5. Para-
graph 5 further provided that

This annual consulting fee will cover on-
going services performed by Remsen for
both this Transaction and any other sim-
ilar securitized financing that is consum-
mated by [SMC] where Remsen is re-
tained as financial advisor. The specific
consulting services that Remsen will
perform during the outstanding term of
the [financing] will be to oversee the
preparation of financial data that must
be provided to the rating agency for its
annual review, conduct said review on
behalf of [SMC], and act as an interface
between [SMC] and the Underwriter,
Servicer, Trustee, and the rating agen-
cy.

SMC stopped paying Remsen the annual
consulting fee starting with the quarterly
payment due August, 31, 1994. Eventually
Remsen filed an action in the District
Court for the Southern District of New
York, *Remsen Partners, Ltd. v. Southern
Management Corporation,* 95 Civ.
2454(SS) ("*Remsen I*"), to collect its un-
paid fees and expenses. *Remsen I* was a
precursor to the present dispute in which
Remsen has sought to recover the post-
closing fees allegedly incurred after its
favorable judgment in *Remsen I.* SMC
raised several defenses in *Remsen I,* two
of which, because SMC has raised the
same or similar defenses in the present
dispute, are relevant to the Trustee's mo-
tion. That is, SMC argued then and ar-
gues now that Remsen functioned as an
unlicensed broker on the transaction and,
therefore, was barred by N.Y.R.P.L.
§ 442–d from collecting any fees. Second-
ly, SMC argued then and argues now that
Remsen had not performed the post-clos-
ing services required by paragraph 5 of
the Retention Letter, precluding Remsen
from recovering its post-closing fees.
SMC also counterclaimed in *Remsen I* for
damages (the cost of hiring other profes-
sionals) arising from this alleged breach,
and asserts a claim in Remsen's bankrupt-

cy case for *Remsen's* alleged post-*Remsen I* breach.

After a trial in *Remsen I*, District Judge Sotomayor (now Judge of the United States Court of Appeals for the Second Circuit) issued a bench ruling on October 31, 1996 ("*Remsen I* Opinion") that SMC, not Remsen, had breached the Retention Letter. Judge Sotomayor found that (a) Remsen was a financial advisor, not a broker, and, therefore, was not subject to N.Y.R.P.L. § 442-d (*Remsen I* Opinion, 579–81, 595–97); (b) Remsen did not breach its post-closing obligations to SMC; instead, "SMC improperly terminated Remsen, despite Remsen's capability and willingness to perform the contract" (*id.* at 601; *see also id.* at 581–82, 589–91); and (c) SMC accordingly did not have a claim against Remsen for breach of the Retention Letter (*id.* at 606–07).

Also relevant to the present dispute is Judge Sotomayor's characterization of Remsen's post-closing fee, which she found to be a "flat fee regardless of the amount of work. As long as Remsen performed what was required under the letter agreement, it was going to get paid." *Id.* at 593. Judge Sotomayor also noted that, just as SMC ran the risk when it agreed to the fee that Remsen would have less work than SMC expected, Remsen ran "a risk that there would be more work worth more than [$]150[,000]." *Id.*

Judge Sotomayor held that she would "award the amounts due today under the amount that's invoiced," minus a $6,000 deduction for a mistakenly billed expense, plus interest. *Id.* at 606, 609. That is, the *Remsen I* Opinion was not self-executing as to Remsen's post-closing annual flat fees payable on a quarterly basis that might accrue after the date of Judge Sotomayor's ruling. Remsen would have to collect those fees separately. *Id.* at 607; *see also id.* at 549.

The parties' agreed findings of fact in *Remsen I*, which Judge Sotomayor adopted and then supplemented, stated that Remsen had eight unpaid $37,500 invoices for the quarters ended August 31, 1994 through May 31, 1996, plus expenses of $22,172.44 that were invoiced on August 28, 1994. *Id.* at 571–74. When SMC did not pay the amount set forth in the judgment in *Remsen I*, Remsen obtained garnishment orders against numerous SMC-owned partnerships. SMC then paid the $384,357.79 judgment[1] on or about January 8, 1997.

SMC had appealed the judgment in *Remsen I*, but, consistent with its satisfaction of the judgment, SMC did not pursue the appeal, which was accordingly dismissed on January 15, 1997. Thereafter, Remsen provided SMC and its shareholders, directors, officers and employees with an executed release. It was in the form of a general release and covered the period through the date of the release, January 29, 1997; however, it contained the following insert:

> This release is limited to actions and claims based upon the subject matter of the complaint, as amended, filed in the United States District Court, Southern

---

1. It is not clear whether this sum includes payment for a ninth quarter, ending August 31, 1996, that was not referenced in the agreed findings of fact but expired before the entry of the judgment in *Remsen I*. As discussed below, the objectants to the Trustee's motion contend that Remsen now has a right to payment of post-closing fees incurred after the date of the *Remsen I* judgment and payable on the last three quarters of the year beginning May 28, 1996 (that is, the quarters ending November 30, 1996, February 28, 1997 and May 31, 1997), as well as $150,000 for the year beginning May 28, 1997. From this, I assume that the August 31, 1996 quarterly payment was included in the *Remsen I* judgment and is not now owing, although a trial on the merits may prove otherwise.

District of New York, between the releasor and releasee under Index No. 95–C–2454.

(the "Release"). Because SMC already had paid the judgment and its appeal had been dismissed, Remsen received no consideration for the Release.

SMC's securitized financing was replaced in July, 1997. Remsen therefore has calculated that SMC owes it additional post-closing, post-*Remsen I* compensation as follows: $37,500 for each of the three quarters ended November 30, 1996, February 28, 1997 and May 31, 1997, respectively—covering the last 75 percent of the annual flat post-closing fee that accrued on May 28, 1996 [2]—and $150,000 for the annual flat fee accrued as of May 31, 1997 and payable in the next four succeeding quarters, for a total of $262,500, plus interest. SMC has not paid this amount, and it is this claim of Remsen's (which, with interest, is estimated to be for approximately $390,000) that the Trustee now seeks to settle.[3]

Remsen filed under chapter 11 of the Bankruptcy Code on August 31, 1998, before it commenced litigation against SMC to recover the remaining claimed post-closing fees. Bankruptcy Judge Bohanon authorized Remsen's retention of Borovina & Marullo PLLC to pursue recovery of the claim against SMC. (Mr. Borovina of that firm, while still a member of Shaw, Licitra, Bohner, Esernio, Schwartz & Pfluger, P.C. ("Shaw Licitra"), represented Remsen in *Remsen I*.) Under the retention order, Borovina & Marullo is to be compensated, subject to sections 330 and 331 of the Bankruptcy Code, strictly on a contingency basis. The firm has agreed that it is not entitled to payment of either fees or expenses except from the proceeds of a successful recovery, either by suit or settlement, from SMC, in which event Borovina & Marullo would request payment of 33.33 percent of the judgment or settlement proceeds plus reimbursement of reasonable expenses.

Borovina & Marullo later commenced suit against SMC in the District Court for the Southern District of New York (Hon. Richard C. Casey, J.) ("*Remsen II*"), and Mr. Borovina, as trial counsel in that litigation, represented at the hearing on the Trustee's motion, without contradiction by counsel for the Trustee or SMC, that, although the litigation is now on the suspense calendar because of the conversion of Remsen's chapter 11 case to a case under chapter 7, extensive discovery has been finished, Remsen is ready for trial and, subject to the District Court's calendar, trial could be completed by the end of this summer.

By order dated December 7, 2001 Judge Bohanon converted Remsen's chapter 11

---

**2.** This assumes, as noted above, that the August 31, 1996 quarterly payment was made as part of the satisfaction of the *Remsen I* judgment.

**3.** Remsen also has made a demand for attorneys fees incurred in pursuing its claims against SMC, which would be resolved by the proposed settlement. However, Remsen's trial counsel in *Remsen I* (now an objectant to the Trustee's motion) acknowledged at the hearing that the Release probably bars any claim for attorneys fees accrued in connection with *Remsen I*, and the Court discounts, for purposes of evaluating the Trustee's motion, Remsen's right to collect attorneys fees in connection with Remsen's present claim, because that right is based solely on an indemnity agreement incorporated in the Retention Agreement. Because such an indemnity agreement customarily addresses claims only by third parties, I am skeptical that it could serve as a basis for Remsen's claim against SMC for attorneys fees arising from SMC's breach of the Retention Agreement. Of course, however, Remsen would be free to pursue this claim on the merits in the pending litigation.

case to a case under chapter 7 of the Bankruptcy Code. Counsel for the Trustee stated at the hearing that there currently is no cash in the estate. (The Debtor's principal, William Teitelbaum, is required under an April 9, 2003 order to account for and turn over by May 8, 2003 any cash of Remsen that was under his control since the commencement of the chapter 11 case, and the Trustee hopes that this will lead to the turnover of up to approximately $32,000, but it is not clear that Mr. Teitelbaum has the money. The Trustee has not identified any other source of cash besides the claim against SMC.)

The Trustee's proposed settlement with SMC provides that promptly after Court approval of the settlement SMC shall pay $68,000 to the estate and waive any claim that SMC may have against the Debtor,[4] in return for which SMC would receive a release and *Remsen II* would be dismissed.

The Trustee's counsel candidly acknowledged that, given the Trustee's commission, the fees and expenses of his professionals, and the other expenses of administering the chapter 7 case, the Debtor's unsecured creditors are not likely to receive any distribution in the chapter 7 case if the settlement is approved, or, in other words, they probably will receive no benefit from the proposed settlement. The Trustee's counsel estimates that the $68,000 settlement proceeds would probably cover only the claims of the Trustee and his professionals and other chapter 7 administrative expenses. Based on the Trustee's estimate of allowable claims, if Mr. Teitelbaum turns over

any funds, unsecured creditors still may not receive a distribution, or they may receive a negligible distribution. Were the Trustee to prevail in *Remsen II*, on the other hand, it is estimated that a $390,000 judgment would result in a significantly higher distribution to general unsecured creditors, of approximately 25 percent to 34 percent after payment of Borovina & Marullo's fees and estimated expenses as litigation counsel.

The Trustee's counsel informed the Court that he believes that collectibility is not an issue. That is, he believes that SMC is able to satisfy a $400,000 judgment. SMC's counsel did not disagree.

## DISCUSSION

### I. *Borovina & Marullo's Standing.*

■ As an initial matter, the Trustee questions Borovina & Marullo's standing to object to the proposed settlement. Borovina & Marullo was retained by Remsen to pursue *Remsen II* during the chapter 11 case, but not by the Trustee in the subsequent chapter 7 case. The Trustee argues, therefore, that Borovina & Marullo will not be entitled to any recovery if the Trustee's settlement is approved and, consequently, that the firm is not a creditor with an allowable claim entitled to object to the settlement. Leaving aside whether the Trustee's view of the merits of Borovina & Marullo's contingent claim is correct, the Trustee's position proves too much. Borovina & Marullo is "aggrieved" by the proposed settlement, and, therefore, even if it is not a party in interest entitled to be heard as of right under section 1109(b) of

---

4. SMC's claim waiver has no apparent value to the estate: if SMC has a claim against Remsen, notwithstanding Judge Sotomayor's ruling in *Remsen I* dismissing SMC's breach claim, it is likely, as discussed immediately below, that there will be insufficient funds in the estate to make any distribution on that claim if the proposed settlement is approved. If, instead, the settlement is denied and Remsen's claim in *Remsen II* is valid, which should result in a meaningful distribution to unsecured creditors, SMC would not have an allowed breach claim against Remsen's estate.

the Bankruptcy Code, it has standing to object to the Trustee's motion because the firm will have the chance to have an allowed claim, and, it argues, a distribution, if the settlement is disapproved and *Remsen II* continues to be pursued (it would be bizarre for the Trustee not to retain Borovina & Marullo to continue with *Remsen II* if the proposed settlement is denied) but will have little or no recovery if the settlement is approved. *In re PWS Holding Corp.*, 228 F.3d 224, 248–9 (3d Cir.2000); *Monus v. Lambros*, 286 B.R. 629, 634–5 (N.D.Ohio 2002) ("aggrieved" person has standing even if section 1109(b) of the Bankruptcy Code does not apply).[5] In addition, there is no dispute that Mr. Borovina's former firm, Shaw Licitra, is a non-contingent creditor of the estate with standing to object to the settlement, and Shaw Licitra has adopted Borovina & Marullo's arguments.

Although Borovina & Marullo has standing to object, it obviously is in a unique position, with an "all or nothing" pecuniary interest in defeating the Trustee's motion that might tempt it to overstate the case against the proposed settlement and exaggerate the merits of *Remsen II*. Nevertheless, the Court observed that Mr. Borovina was careful not to exaggerate the merits of his case in *Remsen II* while he provided the Court with the unique perspective of experienced trial counsel in that litigation. *See In re Hydronic Ent., Inc.*, 58 B.R. 363, 366 (Bankr.D.R.I.1986) (placing considerable reliance on opinion of trial counsel who expressed far more optimism than the

chapter 7 trustee about the probability of success).

II. *Standard for Consideration of Proposed Settlement.*

 It is axiomatic that "compromises are favored in bankruptcy." 10 *Collier on Bankruptcy* ¶ 9019.01 (15th ed.2003) at 9019–2. "Compromises are a normal part of the process of reorganization. In administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims as to which there are substantial and reasonable doubts." *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968) (quotation omitted). The Supreme Court went on to state, though, "At the same time, however, it is essential that every important determination in reorganization proceedings receive the informed independent judgment of the bankruptcy court," and

> There can be no informed and independent judgment as to whether a proposed compromise is fair and equitable until the bankruptcy judge has apprised himself of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated. Further, the judge should form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors

---

**5.** Contrary to the Trustee's interpretation of Borovina & Marullo's contingent claim, it can be argued, moreover, based on either the contingency fee agreement or Borovina & Marullo's rights in *quantum meruit*, that the firm would have a claim against the estate if the Trustee's proposed settlement is approved. Depending on the basis for such claim, it would arise in the chapter 11 case, and,

therefore, would be junior to the chapter 7 expenses of administration, which, as discussed above, probably would consume all or substantially all of the estate's assets if the proposed settlement is approved, 11 U.S.C. § 726(b), or, alternatively, the claim might be viewed on a *quantum meruit* basis as arising in the chapter 7 case. The Court makes no ruling on this point at this time.

relevant to a full and fair assessment of the wisdom of the proposed compromise. Basic to this process in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of litigation.

*Id.* at 424–25, 88 S.Ct. 1157.

 The standard for approving a proposed settlement, which ultimately rests in the Court's sound discretion, *Anaconda–Ericsson, Inc. v. Hessen (In re Teltronics Servs., Inc.),* 762 F.2d 185, 189 (2d Cir.1985); *In re Ionosphere Clubs, Inc.,* 156 B.R. 414, 426–27 (S.D.N.Y.1993), reflects the tension expressed by *TMT Trailer Ferry.* On the one hand, "In reviewing the settlement, the court is not required to conduct a mini-trial of the compromised issues or claims." *In re Mrs. Weinberg's Kosher Foods, Inc.,* 278 B.R. 358, 362 (Bankr.S.D.N.Y.2002). Instead, it simply should canvas the issues, and the court's approval of the proposed settlement will be sustained on appeal if the settlement is found not to fall "below the lowest point in the range of reasonableness." *In re Ionosphere Clubs,* 156 B.R. at 426 (S.D.N.Y.1993), quoting *Cosoff v. Rodman (In re W.T. Grant Co.),* 699 F.2d 599, 608 (2d Cir.1983), *cert. denied,* 464 U.S. 822, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983); *Newman v. Stein,* 464 F.2d 689, 693 (2d Cir.1972), *cert. denied sub nom. Benson v. Newman,* 409 U.S. 1039, 93 S.Ct. 521, 34 L.Ed.2d 488 (1972). On the other hand, following *TMT Trailer Ferry,* the court may not simply rubber stamp the recommendation of a trustee or debtor in possession but, instead, must make an independent, "full and fair assessment of the wisdom of the proposed compromise." *In re Mrs. Weinberg's Kosher Foods,* 278 B.R. at 362, quoting *TMT Trailer Ferry,* 390 U.S. at 424–25, 88 S.Ct. 1157; *see also In re Ionosphere Clubs,* 156 B.R. at 426.

 Guided by the factors listed in *TMT Trailer Ferry,* 390 U.S. at 424, 88 S.Ct. 1157, the courts have identified several factors to be considered when evaluating whether a proposed settlement is within the reasonable range of litigation possibilities and in the best interest of the estate and creditors: (a) the probability of success in the litigation, (b) the difficulties, if any, to be encountered in the matter of collection, (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it, and (d) the paramount interest of creditors and a proper deference to their reasonable views. *In re Jackson Brewing Co.,* 624 F.2d 605, 607 (5th Cir.1980); *In re Carla Leather,* 44 B.R. 457, 466 (Bankr. S.D.N.Y.1984). Other potentially relevant factors include (e) the competency and experience of the trustee and trustee's counsel (although their recommendation alone is not dispositive), (f) the nature and breadth of releases to be issued as a result of the settlement, (g) the extent to which the settlement is not the product of fraud or collusion, *In re Mrs. Weinberg's Kosher Foods,* 278 B.R. at 362 (listing each factor), and (h) whether the proposed settlement is supported by an adequate record. *In re Lion Capital,* 49 B.R. 163, 176 (Bankr.S.D.N.Y.1985).

III. *Reasonableness of the Proposed Settlement.*

 Application of the foregoing factors shows that the Trustee has not sustained his burden of establishing that the proposed settlement is in the range of reasonableness and in the best interest of the estate and creditors. *In re Hydronic,* 58 B.R. at 365 (as compromise's proponent, trustee has burden of persuasion that settlement is in the estate's best interest).

A. *Factors Other than the Merits of the Litigation.* Leaving aside for the mo-

ment the key question of the probability of success in litigation as compared with the benefits of the proposed settlement, consideration of the other factors discussed above either argues against approval of the settlement or, at best for the Trustee, supports neither approval nor disapproval.

As acknowledged by the Trustee's counsel and not disputed by counsel for SMC, there is little or no risk that SMC could not pay a judgment of up to $400,000; the $68,000 settlement amount was not arrived at because of concerns that SMC would default in paying a larger amount.

Because of Borovina & Marullo's contingency fee agreement, the estate will not bear the cost of continued litigation unless the Trustee obtains a judgment against SMC or a favorable settlement in *Remsen II*. Therefore, unless it appears likely that the estate would recover less on a net basis, after payment of Borovina & Marullo's contingency fee and reasonable expenses, than it would recover on a net basis under the proposed $68,000 settlement, this factor argues against the settlement. *See In re Hydronic*, 58 B.R. at 367 (contingency fee minimizes cost of litigation). As discussed below in connection with the Court's consideration of the merits of *Remsen II*, it is, instead, likely that the estate will recover more, on a net basis, in continued litigation than under the settlement; indeed, the settlement amount appears more closely to reflect SMC's best litigation result, not Remsen's.[6]

The Trustee's counsel and counsel for SMC also did not dispute Mr. Borovina's contentions, as trial counsel in *Remsen II*, that discovery is substantially complete and the case could be tried by the end of this summer. *In re Hydronic*, 58 B.R. at 367 (discovery completed, trial likely to occur soon: no significant delay factor); *In re Lion Capital*, 49 B.R. at 189 (settlement on eve of trial: no delay factor). Even applying some skepticism to that time estimate, the estate and creditors would not appear to be prejudiced by reasonable additional delay in going to trial in *Remsen II*. The chapter 7 case has not proceeded on a rapid timetable (for example, the Trustee has not yet deposed Mr. Teitelbaum to determine what happened to Remsen's cash when it went out of business, and apparently has not started to review the merits of claims against the estate, and final fee applications are not yet in prospect), and the benefits of promptly securing the proposed settlement are, in any event, illusory for the creditors, with the exception of creditors who must make fee applications, because they are not likely to receive any distribution of the settlement proceeds.

 Other than an assessment of the merits, this is the most important consideration: the paramount interest of creditors cannot support the proposed settlement because most of the creditors are not likely to get any money from the settlement. This does not mean that a settlement must be denied if it would not result

---

**6.** The Court does have some concern that Borovina & Marullo might be disqualified under N.Y. Disciplinary Rule 5–102[A] from continuing as trial counsel, a point raised by SMC's counsel at the Rule 9019(a) hearing, because it might become obvious that Mr. Borovina ought to be called as a witness in *Remsen II* on behalf of Remsen. This issue arises in the context of construing the Release, as discussed below. However, based

on (a) the plain language of the Release and the presence on *Remsen I's* docket of most, if not all, of the documents that are relevant to construing the Release, and (b) the reasonable possibility that the Trustee could obtain substitute contingency fee counsel if Borovina & Marullo were disqualified, the risk of disqualification does not appear to be so great, or the consequences of disqualification so onerous, as to preclude pursuit of *Remsen II*.

in a recovery by general unsecured creditors. The merits of the underlying dispute may make it unreasonable for unsecured creditors to expect any recovery; indeed, the court should heavily discount junior creditors' objection to a proposed settlement in such a context, on the basis that they are seeking merely to gamble with the senior creditors' recovery in the unreasonable hope of hitting a litigation jackpot. However, where, as here, it appears that the settlement proceeds will be paid entirely or almost entirely to chapter 7 professionals, the Court will somewhat discount the recommendation of the Trustee's counsel, even where, as here, counsel is experienced, and look more closely at whether the motion adequately informed creditors of the merits of the proposed settlement. *Cf. In re Matco Electronics Group, Inc.*, 287 B.R. 68, 76–7 (Bankr. N.D.N.Y.2002) (possibility that proponent of settlement is not disinterested raises "red flag"). In other words, while a trustee's counsel is normally hesitant to describe in detail the reasons for entering into a settlement, for fear that such a description will highlight the weakness of its case if the settlement is denied, the Rule 9019(a) motion should alert creditors in the event that they probably will receive little or no benefit from the proposed settlement, and, in such circumstances, should provide a reasonably detailed explanation of the trustee's reasons for nevertheless agreeing to such a compromise.

The Trustee's motion papers lacked such information. Moreover, the motion papers were misleading in several important ways. For example, the motion quoted what it described as the "pertinent part" of Remsen's post-closing fee agreement yet omitted the language referring to the $150,000 annual flat fee, leaving the reader with the impression that Remsen was entitled only to two or, at most, three accrued quarterly fees. The motion also referred to "the general release Debtor tendered to SMC for the period through January 29, 1997" without also noting the insert to the Release that limited it to "actions and claims based upon the subject matter of the complaint" in *Remsen I;* therefore, the motion gave the impression that Remsen had clearly released its right at least to the November 30, 1996 quarterly payment. The motion incorrectly suggested that a substantial portion of Remsen's claim is for attorneys fees, whereas Mr. Borovina explained that the attorneys fee claim is in addition to Remsen's asserted $390,000 claim (which comprises $262,500 of unpaid advisory fees plus interest). The motion also suggested that the settlement would avoid the time and expense of litigation, without informing creditors that trial counsel in *Remsen II* had agreed to a full contingency arrangement or that the projected timetable envisions trial in *Remsen II* by the end of the summer. Finally, the motion leaves the impression that Remsen was required to perform post-closing services and failed to perform them, when it appears that (a) the Trustee's counsel never independently investigated whether Remsen (i) performed such services or (ii) was thwarted by SMC in performing such services, and (b) there is evidence that Remsen did perform such services.

It is not surprising, therefore, that no creditors objected to the proposed settlement with the exception of the three objectants who were independently familiar with the litigation. Given the foregoing, one cannot assume that the creditors' failure to object indicates an informed judgment to support the settlement. One can assume, instead, that if they had been adequately informed, more creditors would have opposed it. Moreover, the failure by Trustee's counsel to independently investigate whether Remsen provided, or was ready, willing and able to provide, neces-

sary post-closing services, as the objectants contend, or as SMC asserted, failed to do so, has resulted in an arguably unbridgeable hole in the record. *See, e.g., In re Lion Capital,* 49 B.R. at 176, 189–90 (inadequate record, reflecting trustee's lack of reasoned analysis of key issues, requires disapproval of proposed settlement).

B. *Analysis of the Merits of the Litigation.* The Trustee's counsel stated that he analyzed the issues posed by *Remsen II* by having Mr. Borovina and counsel for SMC separately describe their litigation positions to him. The Court took the same approach, and, although the following is merely a canvas, not a determination, of the merits, the record clearly indicates that Remsen is likely to succeed in the litigation.

SMC takes the following positions: (a) the Release bars recovery of post-*Remsen I* fees and the cost of collection; (b) after *Remsen I,* Remsen did not provide the services required by paragraph 5 of the Retention Letter and, therefore, has no right to any fees that might have accrued after *Remsen I;* (c) notwithstanding Judge Sotomayor's ruling that Remsen was not a broker in the SMC transaction, Remsen is collaterally estopped from arguing that it was not a broker in the SMC transaction by a January 22, 1998 decision by the District Court for the District of Columbia. in *The Stephen A. Goldberg Company v. Remsen Partners, Ltd.,* Civ. No. 96–2742 (Hon. Thomas Penfield Jackson, J.) ("*Goldberg* "), that Remsen was a broker in a different transaction; (d) Remsen miscalculates the claimed fees, so that, even if Remsen prevailed in *Remsen II,* SMC would have to pay only approximately $115,000 (comprising $37,500 for the quarters ended February 28, 1997 and May 31, 1997, plus interest), which, minus Borovina & Marullo's reasonable expenses, estimat-

ed at $20,000, and that firm's contingency fee, would leave a net recovery for the estate of approximately $63,327, which is $4,673 worse than the settlement; and (e) Remsen has no right to attorneys fees for pursuing its claims against SMC in either *Remsen I* or *Remsen II.*

Mr. Borovina takes the position, however, which the other two objectants have adopted, that (a) the Release is limited by its terms to the claims raised in *Remsen I,* not *Remsen II;* (b) if Remsen had to provide further post-closing services under paragraph 5 of the Retention Letter notwithstanding Judge Sotomayor's ruling that SMC had improperly terminated that agreement, Remsen (i) did provide such services and (ii) to the extent that it did not provide such services in full, SMC's breach prevented it from doing so; (c) Remsen is not collaterally estopped by *Goldberg,* and, in any event the *Remsen I* Opinion is *res judicata* that Remsen was not a broker in the SMC transaction; (d) SMC's calculation of Remsen's best-case damages ignores Judge Sotomayor's description of Remsen's flat fee arrangement and the plain meaning of the Retention Letter as well as the limited scope of the Release and, therefore, improperly excludes the November 30, 1996 $37,500 quarterly payment and the $150,000 annual flat fee accruing on May 28, 1997; and (e) the Release does not preclude Remsen's claim for attorneys fees, at least those incurred in *Remsen II.*

The objectants further argue that the Trustee's counsel has misunderstood the basis and calculation of Remsen's claims in *Remsen II* and has not independently investigated whether Remsen indeed provided, or was ready, willing and able to provide, the post-closing services for the period in question but was thwarted in doing so by SMC's breach.

Further, the objectants have not argued, but could argue, that Borovina & Marullo might assert a claim based either on its retention agreement or in *quantum meruit* in connection with the proposed settlement.[7] If allowed and granted administrative expense status in the chapter 7 case on a *quantum meruit* basis, this claim would further reduce other priority creditors' recovery from the proposed $68,000 settlement amount, as Borovina & Marullo's claim would reduce creditors' recoveries from a successful judgment or settlement in *Remsen II.*

1. *The Release.* At the hearing, the Trustee's counsel heavily relied on the Release; however, the plain language of the insert to the Release indicates that the Release covers only the claims raised by the complaint in *Remsen I.* The claims in *Remsen II* are separate from those claims; the *Remsen I* Opinion was not self-executing as to claims for post-closing fees arising thereafter. Moreover, Remsen received nothing for the Release: by the date of the Release, SMC already had satisfied the judgment in *Remsen I* and its appeal of the *Remsen I* Opinion already had been dismissed. As a practical matter, therefore, it would have been highly illogical for Remsen to have entered into a release of post-*Remsen I* claims, as SMC contends, under such circumstances. As a legal matter, the absence of fair consideration for such a release means that the Trustee probably could avoid the Release as a fraudulent transfer if it nevertheless were said to cover post-*Remsen I* claims.

2. *Remsen's Provision of Post–Closing Services after Remsen I.* It is difficult to see the basis for SMC's argument that Remsen is precluded from collecting its post-*Remsen I* fees by not having provided post-*Remsen I* services, given that Judge Sotomayor found that SMC had improperly terminated and breached the Retention Letter by preventing Remsen from providing post-closing services. In any event, however, SMC offered no evidence that Remsen in fact failed to provide such services, and counsel for the Trustee apparently did not independently investigate whether such services were provided or whether Remsen was able to provide such services but was thwarted from doing so by SMC. On the other hand, Mr. Teitelbaum represented to the Court that Remsen did provide such services after *Remsen I,* at least until SMC prevented Remsen from further providing them, thus repeating the pattern that Judge Sotomayor found in the *Remsen I* Opinion. In addition, Mr. Borovina introduced two documents dated February, 1997 and March 17, 1997, respectively (Objectants' Ex. 1 and 2) that corroborate Mr. Teitelbaum's representation that Remsen made itself available to provide the services described in paragraph 5 of the Retention Letter as interpreted by the *Remsen I* Opinion and, in fact, provided such services at least for a number of months after *Remsen I.*

3. *Was Remsen a Broker?* Given Judge Sotomayor's finding in the *Remsen I* Opinion that Remsen was not a broker

---

7. Moreover, Borovina & Marullo is not required to be paid its contingency fee upon a judgment or settlement of *Remsen II;* under section 330 of the Bankruptcy Code, the Court must first review the firm's fee application to determine whether the requested fee is reasonable and could reduce the contingency fee percentage depending upon, among other things, the result achieved in *Remsen II* given the perceived difficulty of that litigation, which could increase the net to creditors from the litigation. Thus SMC's argument about the need to subtract Borovina & Marullo's 33% fee from a settlement or judgment in *Remsen II* while there would be no deduction for that firm from the proceeds of the proposed settlement may be questioned.

subject to N.Y.R.P.L. § 442–d, this argument by SMC appears to be a red herring. Moreover, even if SMC were able to contend that collateral estoppel would prevent Remsen from relying upon the *res judicata* effect of Judge Sotomayor's ruling in *Remsen I,* Remsen does not appear to be collaterally estopped by Judge Jackson's decision in *Goldberg,* upon which SMC relies.

First, Judge Jackson's application of New York law on the broker issue in *Goldberg* was an alternative holding. *Goldberg,* Memorandum and Order dated January 22, 1998 ("*Goldberg* District Court Opinion") at 8 n. 2. Second, in affirming Judge Jackson, the Court of Appeals for the District of Columbia Circuit expressly declined to consider New York law, concluding that it would apply only the law of the District of Columbia. *Goldberg,* No. 98–7022 at 3. (Judge Jackson had acknowledged that "it appears that the New York statute is construed more narrowly than its D.C. counterpart." *Goldberg* District Court Opinion at 15.)

Third, Judge Sotomayor found that the SMC transaction did not merely provide financing for SMC but restructured SMC financially, which benefit was achieved because of Remsen's financial—not brokerage—advice *(Remsen I* Opinion at 580–81), whereas Judge Jackson focused on Remsen's role as a "go-between" for Goldberg and its financing source, a traditional broker's role. *Goldberg* District Court Opinion at 10–11.

Finally, the Retention Letter with SMC differs from Remsen's retention agreement with its client in *Goldberg* in at least one material respect. Judge Jackson relied heavily on the fact that Remsen's fee in *Goldberg* was contingent upon the success of the transaction and tied directly to the value of the financing (being measured as a percentage of that financing) and,

therefore, found that the fee structure fit the classic definition of a broker's commission; indeed, Judge Jackson made this point four times. *Goldberg* District Court Opinion at 3, 11–12, 14, 17. On the other hand, the Retention Letter includes fixed fees, on both a monthly and an annual basis, that are not tied to a percentage of the underlying financing.

Thus it appears highly unlikely that Remsen could be collaterally estopped by *Goldberg. Wight v. Bankamerica Corp.,* 219 F.3d 79, 88 (2d Cir.2000) (no collateral estoppel if "strict requirement" of identity of issues has not been satisfied); *Central Hudson Gas & Electric Corp. v. Empresa Naviera Santa S.A.,* 56 F.3d 359, 368 (2d Cir.1995) (collateral estoppel requires, among other things, identity of issues and that the issues were necessary to support a valid and final judgment on the merits).

4. *Calculation of the Fee.* Remsen also appears to have a substantially better argument than SMC on how to calculate the post-*Remsen I* fee. When pressed, counsel for SMC and the Trustee acknowledged that they disregarded the fee for the quarter ended November 30, 1996 not for any independent reason but because they believed that it was subject to the Release. However, as discussed above, the Release does not appear to cover claims, such as the November 30, 1996 quarterly amount, that arose after *Remsen I.* Moreover, paragraph 5 of the Retention Letter appears to provide Remsen with an "annual consulting fee" of $150,000 that accrues on each anniversary of the closing of the transaction, and is payable on a quarterly basis thereafter, until the financing terminates. This is consistent with Judge Sotomayor's description of the "flat fee" at page 593 of the *Remsen I* Opinion. SMC, on the other hand, takes the position that even an *accrued* flat annual $150,000 fee must be reduced once the transaction

was refinanced (in addition to, as Remsen does not dispute, the termination upon a refinancing of Remsen's right to accrue any more annual $150,000 flat fees). This does not appear to be consistent with the Retention Letter and would deprive Remsen of the benefit of compensation for work that it already had performed.

It therefore appears that Remsen can make a strong case that it is entitled to three unpaid quarterly installments of the annual fee that accrued on May 28, 1996, as well as $150,000 for the annual fee that accrued on May 28, 1997. Contrary to SMC's assertion, therefore, $68,000 is not higher than the best that Remsen can hope to achieve on a net basis in *Remsen II;* instead, that amount seems to be at or below the floor that Remsen could expect to recover, with a strong prospect for a materially better recovery.

### CONCLUSION

Because of the foregoing accumulation of factors, this is the rare case in which the Court cannot approve a proposed compromise, notwithstanding the fundamental role that settlements generally play in bankruptcy cases. Accordingly, the Trustee's motion to approve the settlement with SMC is DENIED.

It is SO ORDERED.